Ruffin, Judge.
 

 The act of 1796,
 
 {Rev.
 
 c. 452,) “ to direct the conduct of Judges in charges to
 
 the,petit
 
 jury,” restrains the Judge from giving an opinion, whether a fact is fully or sufficiently proved. At the same time, it imposes another duty j which is, to state, in a full and explicit manner, the facts given in evidence, and declare and explain the law arising thereon. .
 

 
 *457
 
 Perhaps the Judge, presiding at the trial, woll find no part of his task more difficult than that in determining,may fulfill that part of is daily which is active, that injunction of whis is
 

 ijlne
 
 xo
 
 du-clause must ■e.-pa* , .tit! ♦410 dvemile the other. The fui! aiid explicit statement of the fart-, required from the Judge,’cannot*mean a mere repetifio.il from his notes of the testimony, in the order in yvhich it-was delivered : that would he a 13111 and empty e£remony,.consuming time without conveyin'/; insí ruction. If the Judge is to say any thing, and not he a mere automaton, his statement must be such as to exhibit to the ,f*»r) the 'ature of the Plaintiff’s cause of action, and of dr . :e in point of law, the matters of fact in ■me ( jft,.hc record, and also those in dispute between s upon the testimony actually given, t mling to on either side, the main fact contained in the ) do this, with the least prospect of i Hording to St'*' jury, the Judge is obliged to present the evidence iu such a light, as will divest it of all those immaterial parts-, (hat necessarily more or less incumlfH" every trial,- and to collate the residue, so as to bring it to bear with the strength of combination on the points iu controversy. He is so to present each fact, that' it may have Us fullest legitimate operation on the conclusion sought, for. And if on each side, the evidence is. thus exhibited, it cannot but ease the labours of the jury, lead them thro’ the convictions of their understandings, to a just determination, and give certainty and dignity to the course of justice. An unfair and partial exhibition of the testimony can alone be complained of j and the apprehension of that seems to have induced tjie passage of the law under consideration. It is not for us to say, whether that, apprehension was well or ill founded 5 or whether the administration of the law would not be more certain,
 
 *458
 
 {fs tribunals more revered, and the suitors better satisfied, if the Judge w’ere required to submit his view upon
 
 the whole case,
 
 and after the able and ingenious, but interested and partial arguments of Counsel, to follow with his own calm, discreet, sensible and impartialMummary of the case, Wgludine both law and fact. SuqRmlucidal tions from an*npright, learned and discreet magistrate, habituated to the investigation of complicated masses of testimony, often contradictory, and often apparently so but really reeoncileable, would be of infinite utility to a conscientious
 
 jury in arriving at just conclusions
 
 — net by force of the Judge’s opinion, but of the reasons on which it was founded, and on which the jury would still have to pass. If this duty were imposed on the Judge, it is not to be questioned, that success would, oftener than it does, depend on the justice of the case, rather than the ability or adroitness of the advocate. Bn ouch is certainly neither the. duty, nor within the co JBtency of our Judges,
 
 i
 
 have already mentioned that®fcwou!d be difficult for a Judge, surrounded by all the cubnin-stances, to determine exactly what is his duty in this respect, in-law and his own conscience. With still less cerfairtj^can a revising
 
 Court
 
 lay down
 
 any ralos a pri-ori,
 
 or even apply them, after they are prescribed to cases as they arise. So much of the meaning of words depends upon their context, and of words spoken, upon the tone, emphasis, temper, and manner of the speaker, that it is utterly impossible that the whole can bp transferred to paper, so as to enable an appellate tribunal to pass in general upon cases, without imminent hazard of doing injustice to the parties, and casting unmerited reproach upon the intentions of the Judge, and the understanding of the jury. If 1 were to lay down a rule as growing out of this act of Assembly, I would say, that it was in general this : that the
 
 weight
 
 of the evidence is for the jury ; they hold the scales for that. But the nature,
 
 relevancy,
 
 and
 
 tendency
 
 of the evidence, it is competent for
 
 *459
 
 the
 
 f ióty,
 
 and iiis duty to explain. ,I1« is not only to roc tpiJibaie the testimony, but to show .v hat U tends to
 
 f
 
 cove, upí! he may recapitulate it in such order and con-
 
 *•
 
 ¡ ■ to give it the effect of pros.in^fk.-. fact sought y-.”' :eli if be sufficient for + Whether ,. ? nt, it is the province o . determine; ' * statute, it is their e
 
 <•: '' ■
 
 vinco ; and annot give his opinio r! eirs, tliatit . >r' ' t sufficient* lint if h. <•_ , at ri!. (and
 
 ■ i i*
 
 n:. hes it his duty to spe;
 
 ¡
 
 if ,>! to »e sup-jor-e;! tr «i ids interposition is for t?>e sake,-.f increasing the doubts of the jury, cr leaving them they were : but that ids discussion of the case, f.-Jv, grave, fusible, and impartial, may etnible the jury better to decido upon, the. sufficiency of the proof, tbo’ deprived of the advantage of bis opinion on that point* For a plain departure from that fairness and impartiality, it would bo the duty of this Court to set aside the verdict, as much as if the Judge wore explicitly to declare his opinion upon the weight of the. evidence. But short of a clear case, this Court cannot interpose, but must necessarily leave it to the conscience of the Judge himself, upon' the responsibility of his professional reputation, and official oath and character, to determine.
 

 To apply these observations to the case before us : .It is objected here, that the Court below assumed the power of expressing an opinion upon the facts, or expressed such forced inferences from the testimony, as might bias the minds of the jury. The facts, to which those parts of the charge apply, were the credit due to several witnesses. TS»e main fact in dispute, on which the issue was joined, was the guilt or innocence of the prisoner. This depended upon the subordinate facts of the veracity or falsehood of the tales of the witnesses. Now this last fart — of credibility, or the want of it — rested again upon other facts which tended to sap or sustain it. It is to bo remarked here, that the Judge is to give a full and exp!'*
 
 *460
 
 c¡t statement of
 
 all the facts
 
 given in evidence. What is meant by
 
 “
 
 a fact given in evidence ?” Is it confined to the very words spoken by the witnesses, or does it ex* tend to all attendant circumstances? For instance,it is a rule, that the jury may judge of the credit of a witness, not only upon testimony of his general character, but upon his own testimony — upon the probability of his story, its consistency, or self-contradiction, the witness* willingness to depose to the whole case, or his hesitation and reluctance to testify against the party calling him, Iiis manner, and even the expression of his countenance. Indeed, tl.se principles constitute the chief excellence of the trial by jury ; because the
 
 viva voce
 
 examination represses at once the committing of perjuries, and facilitates their detection. Are not all these circumstances, when they happen, (and happen some of them must in every Case,)
 
 “facts in evidence ?”
 
 If they be not, the jury is to discredit a witness without any fact being in evidence, upon which they can do it. If they be sucii facts, then the Judge is to comment upon each as a fact, as he would on any other. For instance, if a witness, after deposing to the case of rhe Plaintiff, positively refuse to submit to a cross examination, the Court may not only commit him for a contempt, but may commit him before the face of the jury, and pending the trial, though the act of the Court may affect his credit in the estimation of the jury. And in charging the jury, the Judge is not obliged to confine himself to delivering the abstract rule, that a witness does impair his credit by refusing to give full evidence ; but may, and ought also to call the attention of the jury to the specific misbehaviour before their own eyes, a fact in evidence to him and them. Again, if the credit of one witness is assailed upon the ground that lie is contradicted by two others, is the Court barely to inform the jury, that if such contradiction exist, it may Impair the credit of the first witness, but that they h ive the right ia Uw to reconcile the testimony, and then act
 
 *461
 
 ;> ? C may íie not mention
 
 i<
 
 tbem.-t'.'' '"»f< how recon-v\ 'N”er in truth, at" ■ >w how they are con? ts' 'i le, • .ing it to the jury, í< Jv two tales do, or do not. stand together} i ccording to the parts of the transaction to which they -elate, or to tin- meaning of the witnesses ? Bach a course as- this last seems to me to be right, useful and lawful.
 

 In the case before us, it was argued for the prisoner, that the witness’ credit was destroyed, not by the contradiction of others, but by absurdity and contradiction bf hiojselfj in deposing that he saw the prisoner in the night, pull the trigger of the guti. This argument was tceSi or ill founded, as the night might he more or less dark, or the meaning of the witness was to be taken as literally or substantially expressed by his words.
 
 How dark
 
 the night was, was a fact the Court could not say was proved, but only that it was
 
 sworn
 
 to; and
 
 what was
 
 the meaning of the witness, the Court could not determine, but only that it
 
 might
 
 be literal or not; and if it was not literal, then it might have a meaning not absurd and contradictory, and leave it to the jury to say, whether in truth it was light enouglt for the witness to see the prisoner puli the
 
 trigger;
 
 or if not, whether he meant, by
 
 “ seeing him pull the trigger,”
 
 that lie
 
 saw
 
 his
 
 finger on the trigger^at or immediately
 
 after the gun fired. If this last was hi!
 
 meaning,
 
 there was plainly no'contradiction, and the argument fell. This is a deduction of right reason, which the Court could express. The Court did not express an opinion on the question what
 
 in fact
 
 was the meaning, but leaving that to the jury, said, that as it should be found, the other consequence would follow on the one side or the other. So with respect to the other points, the Court uttered nothing but suggestions of certain views which
 
 might
 
 be taken of the testimony ; without saying whether they were, or were not the correct viewfc. example, the Judge, charged the jury, that they ■ÍVJ consider the probability of the tale- of the
 
 *462
 
 witness from Robeson, in passing on the credit of a wk-noss for the SB ato, whom the former was brought to dis-Jr • credit by proving his declarations of enmity ¡o the pri-goner. Now certainly when one witness on his oath deposes to a fact, and another is called to discredit hit» by proving declarations of ill will, the time of making those declarations, and tins person to whom they are said to have been made, are circumstances, with others, tending to shew the probability or improbability that they were in fact made, and thence to impeach the credibility of the witness, who afirms, that they were uttered, or of him w ho denies them. The Judge has a right, as against the witness who proves them, to assume the time deposed to by himself as the true time, and thence submit a reasonable inference, which
 
 may
 
 be drawn. But ho cannot; cay, it
 
 mast
 
 be draw n. That is tile province of the jury. In like manner, the other exceptions air, readily disposed of, without my going thro’ them in detail. The whole are regarded as mere suggestions by the. Judge to the jury, of the construction of which the words of the witnesses are susceptible, or the inferences which could be'deduced from admitted or hypothetical facts ; in each case leaving it to the jury to say, what was the true construction, or the true inference. I think this is the legitimate province of a Judge, within the statute under consideration. if I err, the charge of the Judge is an empty pageant, and ceremonial mockery, which may serve for the amusement of the crowd. But instead of aiding the jury, by rescuing the case from the false glosses of powerful advocates, and the misconception of the evidence, as applicable to the legal controversy, will but confound the jury, and still further obscure the truth.
 

 It is to be recollected, that the objection here is not that the charge of the Judge as a whole, was partial or unfair, and therefore that he did not give “a full and explicit statement of the facts in evidence.” The whole charge is not given to us
 
 ¡
 
 but detached sentences are
 
 *463
 
 picked out, as being
 
 per se
 
 violations of the act of setnbly. They are not so, in themselves; but they would beso, if they formed the whole charge, and so ap-pearnl to us Í mean, if the Court presented to the jury, only the inferences that coaid be drawn on one side, arrayed
 
 in solido,
 
 so as to constitute an imposing argument to the jury, without a iso summing up on the other sitie. For that would be a palpable evasion of the statute, if not a corrupt violation of the great duty of impartiality, incumbent upon every Judge and juror.. There is no such complaint here; the objection on the contrary, is, that
 
 any
 
 suggestion, however reasonable, and tho’ (without relating to the sufficiency of the proof,) it form a part of the most explicit charge, going fully and impartially into the case on both sides, is forbidden to the Judge. That, I think, for the reason Í have given, is not so. Consequently, the motion for a new trial was, in my opinion, properly overruled.
 

 There are also several reasons offered in arrest of judgment. The most important is one taken in this Court for the first time ; which is, that
 
 the depth
 
 of the wound is not laid in the indictment. This is a fatal defect at common law.
 
 Owen’s case
 
 (1
 
 Murph.
 
 452) would save us the necessity of investigation into authorities of a remoter period, as that is precisely in point, were it not, that in our opinion, the law is since altered, aud the alteration can only be properly understood by a recurrence to the ancient law, the better to ascertain the nature of the defect. The act of 1811
 
 (Rev. c.
 
 809) passed the year after
 
 Owen’ case
 
 was decided, and vve have rea son to believe was caused by it. It enacted, that in ail criminal prosecutions in the Superior Courts, it shall be sufficient, that the indictment contain the charge in a plain, intelligible and explicit, manner ; and no judgment shall be arrested for or by reason of any informality or refinement, when there appears to he sufficient in the face of the indictment to induce the Court to proceed to judgment.
 

 
 *464
 
 This law was certainly designed to uphold the execution of public justice, by freeing the Courts from those fetters
 
 of form, technicality
 
 and
 
 refinement,
 
 which do not concern the substance of the charge, and the proof 10 support it. Many of the sages of the law had before called nice objections of this sort a disease of the law, and a reproach to the bench, and lamented that they were bound down to strict and precise precedents, neither wore brief, plain nor perspicuous, than that which they were constrained to reject. In ail indictments, and especially those for felonies, exceptions extremely refined, and often going to form only, have been, though reluctantly entertained. We think the Legislature meant to disallow the whole of them, and only require the
 
 sub-Utance,
 
 that is, a direct averment of those
 
 facts
 
 and
 
 circumstances
 
 which
 
 constitute the crime,
 
 to be set forth.
 
 li
 
 is to be remarked, that the act directs the Court to proceed to judgment, without regard to two things — the one form, the other refinement. The first can embrace perhaps only the
 
 mode of
 
 stating the fact. If the fact be one essentially entering into a crime, if must be set forth
 
 ;
 
 but it need not be set forth in any particular words, if other words can be found which will convey the whole requisite legal idea. Pleaders are much to be commended for pursuing the ancient, settled and approved precedents. They are the best evidence of the law
 
 itself}
 
 and it is a becoming modesty in us, the emblem of merit, to evince a marked veneration for the sages who have preceded us. But it has pleased the Legislature not to require, as a matter of duty, in all cases, what is certainly a matter of prudence and propriety. Allowing it to be necessary that a certain fact shall be stated, they have dispensed with the necessity for stating it in a
 
 certain
 
 manner.— The
 
 State
 
 v.
 
 Dickins
 
 (1
 
 Hay.
 
 406) is the first instance in our hooks, and it is a strong one, illustrative of the construction of fifis branch of our statute. The objections were, that the time was stated
 
 infigures,
 
 and that “
 
 mtor-
 
 
 *465
 
 $< ■” '-v'/ .Ájitiod, They weiebb; ■ vtrn. ■ : the first, f> ^ ■ itfjjMÉbimís wore as¡ .■ -too
 
 ¿
 
 the Court ar jp^Rrfid have been ; Wt .. w .nx', < »se Ufe. ex-toj tion, which was the substance, did as woi«, anil
 
 oy
 
 as strict legal intendment, appear to the Court, as if it had been described by
 
 that name,
 
 since the indictment charged that the Defendant did, by
 
 colour of his office,
 
 and/or
 
 wicked gain’s sake,
 
 receive a larger fee than by law was ■ due to bins. Those facts constitute extortion ; and therefore, the extortion
 
 appeared
 
 to the Court, without the jury
 
 calling it so.
 
 It is to be observed, that the indict-' ment was found in the County Court, and was governed by the act of 1784; though Vfudge, Hay woo» admitted, that'it would not do in the Superior Court, I will not say/hat the last point ruled, would holjl in a case
 
 of felony,
 
 because perhaps there is no periphrasis expressive of the technical- sense of
 
 felonice,dmrglariter, rapuit, murd^avit,
 
 and the like ; or that it was even proper, ip the,Articular case of the misde meanei tlreu before the, Qoa£t,'for the like reason. But although the propriety Of twi«judication of the rule may be (]¡Buí>jb,¿], the rule it-there clearly established. The acfdf 1811 is ali-. teral.copy of that of 1784, except that it-«dates to the Superior Courts. The
 
 State v. Cherry,
 
 (3
 
 Murp.
 
 7) is another case on these statutes. The Court did not intend 'tWlispeuse with
 
 time
 
 and
 
 place,
 
 as materia! facts in the
 
 indMni|‘nt;
 
 but considered, that although the'eom-inon-l&w required them to be annexed expressly to each átí|^^jíyÍSild allow of no iin plication,-.yet undej^the á? .¡útv/ ‘.mié and place were sufficiently annexed to'the gívlilg the portal blow, without saying “
 
 then a f^-there giving
 
 because, to any common mind, the whole matter was staled as one transaction, and the mortal blow was to be referred, as to time and place, to the previous assault.
 

 I do not know that the present objection concerns so Baud) matter of
 
 form,
 
 as of
 
 refinement,
 
 It demands ra
 
 *466
 
 ther that a particular immaterial fact should be stated, ad form.
 
 fit
 
 stated at all, and not, that it is not properly stated. Though it may be examined a little deeper, and turn out to he a mere objection of form
 
 ;
 
 if we consider that the length and depth of the wound are not independent facts of themselves — - but only circumstances and incidents of the wound, showing it to be mortal, over and above the direct allegation of its mortality. Thus it may concern the mere form of getting out the wound. It becomes us now to inquire., whether this he one of those matters of form or refinement, contemplated by the Legislature.
 

 No doubt, that originally, the dimensions of the wound were set. out, that the Court might see whether if was of a nature to cause death. The particularity of the description can he attributed to no other motive. The Court meant to supervise the jury as to the correctness of their conclusion. If this be so, if must have been ue-cessary to allege these matters according to the truth
 
 ;
 
 else the fact found by the jury would give no information to the Court. And at the early day at which Sn-dictinents for murder were first settled, I have no doubt It was required that the proof should support the description. it is impossible to suppose, that a merely false averment was indispensable upon a trial for life. This particularity so often defeated prosecutions, as to place the Judges under the necessity of relaxing, so far as to allow indictments to bo sustained by evidence of the substance. The substance is, that the prisoner gave the decease^, a
 
 mortal blow, of which he died.
 
 A stroke, a mortal wound inflicted thereby, and the averment of death by that wound, are essential. To those points proof has been at all times required. But beyond them no proof has been demanded for centuries past. True, a strict conformity to early usage in framing the accusation has been exacted. But in support of it, much la-
 
 *467
 
 titudc of proof was permitted. Upon this relaxation, it is to be \wHderal that it did hot extend to the indictment' also. It did not however, and the Judges who found the rule of evidence as well established as the method of accusing, often expressed their sense of the incongi uiiy. Yet finding it so, they properly stood by it, until a change should be wrought by the Legislature. In England, that lias not been effected to this day. Here, we think, that it was, by the act of 1311. That the wound, its mortality, and its actually causing the death, are the substantial parts, and the rest refined formalities, may be gathered, not only from the nature of she proof required, but also from the manner in which-the most approved writers speak on the subject. Thus
 
 Lord Hale,
 
 (2
 
 Pl. C.
 
 186)- says, that regularly, the length and depth of the wound are to be shown $ *■ but,” be adds, ■* (ho’ the manner and place of the hurt and its nature be requisite,
 
 as to the formality of the indictment,,
 
 and i' is lit to he done as near the truth ns may be; yet if, upon evidence, it appears to be
 
 another kind
 
 of wound, in
 
 another
 
 place, if the party died of it, it is sufficient.” There arc cases in which the length of the wound need not be given, as where a limb is cue off, or where
 
 moríale vuluus pe-netrans in etper corpus
 
 is alleged. Again,
 
 plaga
 
 means both a wound and a bruise, and no dimensions are required of a bruise. Now is it not strange, that where a mortal
 
 wound
 
 is charged, its dimensions must be gi\en, yet, where tiie wound is stated to be
 
 in
 
 and
 
 through the
 
 body, or by cut ling off the right arm, this latter indictment may be supported by proof of a wound in.,the side or the head, not going through nor dismembering the body, th-it is, by proof of a fact, which if stated in the indictment, would not, of itself, suffice to sustain it. So if the word
 
 plaga
 
 be used, without adding dimensions, it shall be taken to be a
 
 bruise,
 
 though, by itself, it mean wound as well as bruise, and thus life is taken upon an equivocal word. Indeed where it means
 
 bruise,;
 
 
 *468
 
 you may prove a
 
 wound.
 
 To all these purposes we firm cases fully supporting
 
 Lord Hale’s
 
 observation, that if one kind of wound in one place be alleged, it sufficed» prove another kind of wound in another place, pro* vided the party died of that proved. So that the general rule is, that lay the wound as you will, namely, of a certain length and depth, or as going through the body, or by cutting off a limb, or as a bruise, proof that the party died of an injury of the
 
 like kind
 
 is sufficient. So that, in truth, it has now resulted, that the finding of the jury, in fact, gives no information to the Court, of the place or dimensions of the wound, or whether it be a wound or a bruise. Is not this conclusive, that in substance they are all the. same, and are comprehended in the
 
 “ mortal
 
 wound” alleged, whereby the party died ? The only restriction upon the proof is, that it shall not be of a species of death entirely different — for example, by poisoning or strangling, when alleged to be by striking, or
 
 vice versa.
 

 After this, I think, we must conclude with
 
 Sergeant Hawkins,
 
 when speaking of the necessity of setting forth a particular weapon,
 
 (Pl. C. book
 
 2, c. 46, s. 37) that the substance of the matter is, whether the accused gave the party a wound of which he died, and its length and depth are not material, “ though
 
 for former form’s sake,
 
 it be necessary to set forth a particular length & deptli.9* This former form we are released from by the act of Assembly ; and since none of the averments need be supported by other proof than of a killing by a wound, it seems i}(>w to be supeifluous to charge more than a mortal Wound or bruise, without a further formal description of it. Such a description seems now as superfluous as
 
 vi et armis et baculis
 
 are since the statute 37
 
 Henry Will.
 
 We are as much bound to dispense with unnecessary and immaterial averments, when permitted by the statute, as if commanded by it ; and if the one in question be not of that character, it is difficult to say, to
 
 *469
 
 what
 
 “ unseemly nicety”
 
 as
 
 Lord Hale
 
 calls it,
 
 formality
 
 or
 
 refinement
 
 the act can extend.
 

 It appears by a second transcript, that the objection that the indictment is ungrammatical and senseless, because it has “
 
 him
 
 the said
 
 Moses’’
 
 instead of
 
 lie,
 
 grows out of a slip of the Clerk in copying.
 

 Another objection is, that the indictment does not conclude with
 
 “so”
 
 A proper conclusion is necessary; for otherwise it wiil not appear that the jurors have drawn their conclusion from the preceding facts. The precedents within our reach, here, all use the word
 
 “ so.”
 
 But
 
 Mr. Starkie,
 
 in his treatise,
 
 p.
 
 82, gives a conclusion without it | and it would seem, that the words in the conclusion, “ that the said
 
 Moses,
 
 him the said
 
 Gabriel in manner and form aforesaid,
 
 feloniously, wilfully, ánd of his malice aforethought, did kill and murder,” must refer as certainly to the whole matter foregoing, as if “
 
 so”
 
 was also used.
 

 The last objection urged is, that the transcript of the record from Jones Court, does not purport to have been given under the seal of that Court. The answer is, that this Court is incapable of deciding that fact. The certificate of the Clerk of Jones does riot say, that, be gives it under the seal of that Court. But the Clerk of Craven, in setting forth in the transcript from his Court, that from Jones, endeavours to represent the seal
 
 ad ejus locum.
 
 I suppose this to have been unnecessary ; for the Judge below can alone determine the
 
 fact,
 
 whether the seal of Jones Court was affixed to the transcript, and as he has acted on it, it is conclusive. It is the seal of the Court, and not the certificate of the Clerk that it is the seal, which verifies the record.
 

 Wherefore l also think, the reasons in arrest must be overruled, and judgment of death be pronounced on the prisoner.
 

 Per Curiam. — JLet the judgment of the Court below be affirmed.