### THE STATE *v.* LEE DUNLOP.

When, on the trial of a prisoner, a prayer on his behalf for instructions assumes certain facts to be in proof, and in the opinion of the Judge there is no evidence tending to prove them, he ought to say so, and thus disembarrass the jury of the consideration both of the assumed facts and of the questions of law predicated on their assumption.

When instructions are asked for upon an assumed state of facts, which there is evidence tending to prove, and thus questions of law are raised which are pertinent to the case, it is the duty of the Judge to answer the questions so presented and to instruct the jury distinctly what the law is, if they shall find the assumed state of facts to be true, and so in respect to every state of facts which may be reasonably assumed upon the evidence.

If the charge of a Judge on a trial for murder is correct as a general essay on homicide, and his propositions taken generally are supported by the authorities; still it is not a full compliance with the statute, Rev. Code, ch. 31, sec. 130, which requires the Judge to declare and explain to the jury, the law arising on the evidence.

A person indicted in the same bill as an accessory with the prisoner in the murder, although not on trial with him, is an incompetent witness.

What the bystanders may say immediately after a homicide has been committed is not competent evidence.

This was an indictment of the prisoner for the murder of one James A. Gleason, tried at the last term of the Superior Court for the County of LINCOLN, before his Honor, *Judge Logan.* The homicide was alleged to have been committed in the City of Charlotte, but the trial was removed, at the instance of the prisoner, from the County of Mecklenburg to that of Lincoln.

On the trial many witnesses were examined, both for the State and for the prisoner, but it is unnecessary to state the testimony, as the material facts will be found in the opinion of this Court. During the progress of the trial, Burton Schenck was called as a witness for the prisoner, but was objected to by the Solicitor for the State on the ground that he was indicted in the same bill, as an accessory, with the

prisoner. The objection was sustained, though the proposed witness had not removed his trial from Mecklenburg county. The prisoner's counsel offered to prove the declarations of the bystanders immediately after the commission of the homicide, which was done by pistol shots, as to who had fired, whether the prisoner, or both, but the testimony was objected to and rejected.

The prisoner's counsel prayed for several specific instructions, which it is unnecessary to state, as the substance of them will be found in the opinion of this Court. His Honor then, after declining to give the instructions asked for, proceeded to give his charge, in which he explained the different grades of homicide, to-wit: murder, manslaughter and excusable homicide in self-defence, stating the definitions, and setting forth the doctrines applicable to each very much as they are found in the elementary treatises on those subjects, and concluded as follows: " Necessity distinguishes between manslaughter and excusable homicide, not between manslaughter and murder. The prisoner must show mitigating circumstances when there is a killing to reduce the degree of crime. Of these the jury must be satisfied." If the jury were satisfied from the evidence that the killing was in self-defence, they should acquit the prisoner, or if they should be satisfied from the evidences that the killing only amounted to manslaughter, the prisoner should be acquitted."

The jury found the prisoner guilty of murder, and after ineffectual motions for a new trial, and in arrest of judgment, sentence of death was pronounced, from which he appealed to the Supreme Court.

*Hoke* and *Boyden & Bailey* for the prisoner.
*Attorney General* for the State.

RODMAN, J. It is necessary to state the evidence on each side of this case in a general way, in order to see

whether the instructions prayed for, and the points made by the accused, arose out of the evidence; and whether the instructions of the Judge were fairly responsive to those points.

The evidence for the State tended to prove that at an examination in the city of Charlotte touching an assault and battery, held before the Mayor of that city, in December, 1868; the deceased asked the Mayor if he allowed such language to be used in his office, (alluding to some words which it was said passed between the prisoner and one Asher, which it is not material to set out.) The Mayor replied in substance, no. The deceased then said, pointing to the prisoner, " There is a man who has called one a son of a bitch two or three times." The prisoner replied—" the man that says I called him a son of a bitch tells a damned lie." Thereupon two pistol shots were fired in quick succession. Both (it was contended, for the State,) were fired by the prisoner at the deceased, who was mortally wounded, and soon thereafter died. The deceased had no weapon.

On the part of the defendant there was evidence tending to prove, 1. That the deceased fired the first shot at the prisoner. 2. That after the utterance by the prisoner of the words above stated, (or others substantially the same) the deceased said he could not stand that, and raised his right hand to his breast; and that the deceased had previously threatened to kill the prisoner. The prisoner contended, and his counsel in substance requested the Judge to instruct the jury,

1. That if the jury believed that the deceased fired the first shot at the prisoner, the firing by the prisoner was acting in self defence and excusable.

2. That if the prisoner did believe, and had reasonable ground to believe, that when the deceased put his hand to his heart he was about to draw a deadly weapon for the purpose of shooting the prisoner, and that the prisoner be-

lieved and had reasonable ground to believe, that he was in imminent danger of his life, or of some great bodily harm, from the attack which the deceased was making or was manifestly prepared to make; and that the prisoner had no means of escape by a retreat, or otherwise than by killing the deceased, then in such case, the killing was in self-defence, and excusable ; or if, the other circumstances being as supposed, he could have retreated but did not attempt to do so, then in such case the killing was only manslaughter. I have not stated the prayer of the prisoner for instructions in the words of the record, and perhaps not strictly according to its substance. It is not material to do so, as the question presented to us does not turn on the propriety of the instructions asked for, but of those which were given. The prisoner contends that he presented questions which arose upon the evidence, and to which he was entitled to have from the Judge a distinct and particular response; and that if in the opinion of the Judge there was no evidence to support any one or more of the facts which his prayer assumed to be proved, he was entitled to a declaration by the Judge to that effect. We think that this proposition is correct. We do not wish to be understood as implying that the Judge ought to have given either of the instructions which the prisoner actually asked for, or what we have assumed to be their substance. It may be that there was no evidence in support of several of the facts assumed as the basis of the prayer ; we express no opinion on that point.

But we think that when a prayer for instructions assumes certain facts as in proof, when in the opinion of the Judge there is no evidence tending to prove them, he should say so, and thus disembarrass the jury of the consideration, both of the assumed facts and of the questions of law predicated on the assumption. A prisoner is entitled to this.

We think also that when instructions are asked for upon an assumed state of facts which there is evidence tending to

prove, and thus questions of law are raised which are pertinent to the case, it is the duty of the Judge to answer the questions so presented, and to instruct the jury distinctly what the law is, if they shall find the assumed state of facts; and so in respect to every state of facts which may be reasonably assumed upon the evidence.

Upon a demurrer to a pleading or a special verdict, or case agreed, or when, in whatever way, certain facts are ascertained, it becomes the duty of the Judge to apply the law to the facts, and pronounce a judgment. In close analogy to those cases, is the case when upon issue joined, and a trial by jury, there is evidence proving one or another state of facts, according to the credibility and weight of the evidence. In such a case, the Judge cannot apply the law to any ascertained state of facts, for the facts are to be ascertained by the jury, but he must do what the circumstances admit of. To that end, he must tell the jury, if they find the facts thus, the law is thus, &c.

And this brings us to consider whether the questions which were raised by the prisoner, and which he was entitled upon the evidence to raise, were presented by the Judge to the jury, in the way in which the prisoner was entitled by the law to have them presented. There is but a single positive error in the charge of the Judge, suggested by the counsel for the prisoner, viz: his instruction that if the jury were satisfied from the evidence that the killing amounted only to manslaughter they should acquit the defendant. We pass by this exception for the present. In other respects it is conceded that the charge of his Honor is correct as a general essay on the law of homicide, and that his propositions taken generally are supported by the authorities. But the counsel for the prisoner contends that this form of instruction is not a full compliance with the statute (Rev. Code, ch. 31, sec. 130) which requires the Judge to declare and explain to the jury, the law arising on the evidence.

We concur with the counsel for the prisoner in his view of the charge of the Judge; we think it did not give that distinct and plain response to the questions raised which the statute requires. On this point the statute is only declaratory of the common law. It is impossible to frame any general formula which can supercede the distinct application of the law to the particular alleged state of facts or dispense on the part of the Judge with the active exercise of his intelligence. This duty is the *special* duty of a Judge : for this mainly is he required to possess ability and learning ; and to evade or slight it, is to renounce the most difficult, but also the most useful and honorable duty of his office. All lawyers know, that to eliminate facts, to put those which are material in their proper order, and to apply the law to them as a whole, taxes many times the strongest intellect, and always requires an amount of learning and practiced ability which a jury is not supposed to possess, and which it is evident they cannot acquire through the hearing of any general dissertation on the law, however clearly it may be expressed.

For these reasons we think the prisoner entitled to a new trial. It is unnecessary, therefore, to do more than allude to the mistake into which his Honor fell in instructing the jury that, upon an indictment for murder, they could not find the accused guilty of manslaughter. We presume that this was a mere inadvertence.

We concur with his Honor that a person indicted in the same bill as an accessory with the prisoner in the murder, although not then on trial, was an incompetent witness.

We also concur with him, that what was said by the bystanders immediately after the killing was incompetent. The case to which we were referred of *Rex* v. *Lord George Gordon* (21 How. St. Tr. 534,) is not in point. There the prisoner was with a large number of persons engaged in a common unlawful purpose, and the cries of the mob were admitted as evidence of what the purpose was. In this case the *res gesta*

was at an end. What the bystanders said, could only have been either the expression of their feelings, or a narrative in the past tense of what they saw or thought they saw. In the first case it was immaterial; in the second, it was mere hearsay.

Judgment reversed, and *venire de novo.*

Let this opinion be certified.

PER CURIAM.　　　　　　　　　　　　　*Venire de novo.*