### THE STATE v. J. J. BOYLE.

*Trial by Jury—Judge's Charge—Rape.*

1. The duty imposed upon Judges by the Act of 1796 (now section 413 of *The Code*), to "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon," is mandatory.    The only cases in which it may possibly be dispensed with are those where the evidence is uncontradictory and the law plain.

2. This duty is not performed by simply repeating the testimony in the order in which it was delivered, or in a general statement of the principles of law applicable to the case; but it requires th Judge to state clearly and distinctly the particular issues arising in the controversy; to eliminate the controverted facts; to arraign the testimony in its bearing on their different aspects, and to instruct the jury as to the law applicable thereto in such manner as will enable them to see and comprehend the matters which are essential to an intelligent and impartial verdict.

3. Where, therefore, upon the trial of one indicted for rape there was much and conflicting evidence as to whether there was force employed by the prisoner, or that the connection with the prosecutrix—which was admitted by the prisoner—was with her consent, the Court—after correctly laying down the general principles of the law and calling attention to the contradictory statements of prosecutrix and defendant—charged the jury that the only question was whether the carnal connection was had by force and against the will of the prosecutrix, and that all the other testi-

upon circumstances of fact which attended this case; for instance, that if the witness be of good fame, if she presently discovered the offence, if the party accused fled for it—these, and the like, are concurring circumstances which give greater probability to her evidence; but, on the other side, if she concealed the injury for any considerable time after she had an opportunity to complain; if the place where the act alleged to have been committed was where she might have been heard, and she made no outcry, these, and the like circumstances, are to be considered by the jury in determining her credibility.

His Honor did not give these instructions, not because they were not in writing, but because he considered them unnecessary and substantially embraced in the charge he gave.

The jury returned a verdict of guilty, and the prisoner moved for a new trial, and assigned as ground therefor the following:

1. For that his Honor did not, in charging the jury, eliminate the material facts of the case, array the state of facts on both sides, and apply the principles of law to them, so that the jury might decide the case according to the credibility of the witnesses and the weight of the evidence.

2. For error, because his Honor, in submitting to the jury the credibility of the prosecutrix's testimony, did not instruct the jury as to whether any particular value, or any value at all, ought to be given to the fact that the prosecutrix either made or did not make outcry at the time of the alleged rape; whether she concealed or did not conceal the injury for any considerable time after she had opportunity to complain; whether the act was done in a place where other persons might have heard her cries if she made any; whether the place where the injury is said to have occurred was such as to render the perpetration of

104—52

the offence there probable or improbable; whether the pris-
oner, after the alleged commission of the offence, had not
means or opportunity of flight and did, or did not flee.

The Court overruled the motion.

His Honor then pronounced judgment of death, from which
the prisoner appealed.

*The Attorney General* and *Mr. Thomas P. Devereux*, for the
State.

*Messrs. T. C. Fuller, R. H. Battle, S. F. Mordecai* and *George
H. Snow*, for the defendant.

MERRIMON, C. J.: In this State it has ever been the duty
of the Judge presiding in Courts over jury trials to give the
jury appropriate instructions as to the law applicable to the
issues on trial; he is not allowed to "give an opinion whether
a fact is fully or sufficiently proven—such matter being the
true office and province of the jury," but he is expressly
required by the statute (*The Code*, § 413) to "state in a plain
and correct manner the evidence given in the case and
declare and explain the law arising thereon." This statutory
requirement, enacted first, substantially as it now appears,
in 1796, has always since then been regarded as imposing
on the Judges to whom it applied a very important, neces-
sary and, in many cases, difficult duty to discharge properly.
The purpose of it is to have the law made intelligible to the
jury—to have them on such trials instructed by the Court
clearly, explicitly and correctly as to the law bearing upon
the evidence submitted to them as a whole, and upon every
material aspect of it, whether there be many or few such
aspects, and likewise to have the Court, while it carefully
abstains from the slightest expression of any opinion as to
the weight of the evidence, or that a fact is or is not fully or
sufficiently proven, help the jury by a "plain and correct

statement of the evidence to apprehend, comprehend, appreciate, apply and determine" the weight of it properly.    Such statement of the evidence should embrace an explanation of its nature, purpose, bearings and groupings and freeing it from  possible misapprehension occasioned by inadvertence, mistake or the undue zeal of counsel in their arguments to the jury, or otherwise.

The office of the Judge in such connection is to help the jury to see the evidence bearing on the issue and the law arising thereon clearly, stripped of redundant, improper and merely confusing matters and things, whether of evidence, argument of counsel, or law.

Jurors are generally plain, honest, sensible men, unskilled in the law and not much accustomed to nice discriminations and distinctions in matters of evidence and fact.    They need and require the superintendence, guidance and help of a learned and just Judge in reaching correct conclusions. Indeed, experience has shown that without them jurors seldom render intelligent and satisfactory verdicts.    Hence the duty of the Court on jury trials—particularly where there is much evidence, more or less conflicting, presenting several aspects of it, and it is peculiar or unusual in its nature, purpose and application—is matter of serious moment and not to be neglected or ignored.    This is especially so in cases involving human life.    There can be no intelligent or satisfactory trial by jury in cases of importance without a faithful discharge of such duty on the part of the Court; and when it appears that the party complaining may have been prejudiced by a neglect of it, in whole or in part, this will be ground for a new trial.

An erroneous impression seems to prevail to some extent, that it is discretionary with the court whether it will or will not in any case state the evidence to the jury and "explain the law arising thereon."

This Court seems to say so, to some extent, in *State* v. *Morris*, 3 Hawks., 388, and, perhaps, there are like intimations in other cases. But such cases, properly interpreted, apply only to plain cases that do not require such statement of the evidence and explanation of the law. Otherwise, they are not in harmony with a multitude of other decisions of this Court to the contrary, nor are they consistent with the plain words of the statute cited above. In *State* v. *Moses*, 2 Dev., 452, the Court, after saying that the statute "restrains the Judge from giving an opinion whether a fact is fully or sufficiently proven," adds: "At the same time it imposes another duty, which is to state, in a full and explicit manner, the facts given in evidence, and declare and explain the law arising thereon. * * * The act must be so construed as to leave the two duties compatible with each other; for neither clause must overrule the other. The full and explicit statement of the facts required from the Judge cannot mean a mere repetition from his notes of the testimony, in the order in which it was delivered; that would be a vain and empty ceremony, consuming time without conveying instruction. If the Judge is to say anything, and not be a mere automaton, his statement must be such as to exhibit to the jury the nature of the plaintiff's cause of action, and of the defence in point of law, the matters of fact in issue on the record, and, also, those in dispute between the parties, upon the testimony actually given, tending to maintain, on either side, the main fact controverted in the issue. To do this, with the least prospect of affording aid to the jury, the Judge is obliged to present the evidence in such a light as will divest it of all those immaterial parts that necessarily, more or less, encumber every trial, and collate the residue so as to bring it to bear, with the strength of combination, on the points in controversy. He is so to present each fact, that it may have its fullest legitimate operation on the conclusion sought for. And if, on each side, the evidence is

thus exhibited, it cannot but ease the labors of the jury, lead them, through the convictions of their understandings, to a just determination, and give certainty and dignity to the course of justice."

In *Bailey* v. *Pool*, 13 Ired., 404, the Court said: "We do not consider a Judge, under the Act of 1794, in delivering his charge on the facts of a case, to be a mere machine to detail to the jury the evidence just as it occurred, and in the order it occurred; but it is his duty, when he does charge upon it, to collate it and bring it together in one view, on each side, with such remarks and illustrations as may properly direct their attention."

In *State* v. *Dunlop*, 65 N. C., 288, the Court again said: "We concur with the counsel for the prisoner in his view of the charge of the Judge; we think it did not give that distinct and plain response to the questions raised which the statute requires. On this point, the statute is only declaratory of the common law. It is impossible to frame any general formula which can supersede the distinct application of the law to the particular alleged state of facts, or dispense, on the part of the Judge, with the active exercise of his intelligence. This duty is the *special* duty of the Judge; for this, mainly, is he required to possess ability and learning; and to evade or slight it, is to renounce the most difficult, but also the most useful and honorable duty of his office. All lawyers know that to eliminate facts, to put those which are material in their proper order, and to apply the law to them as a whole, taxes, many times, the strongest intellect, and always requires an amount of learning and practiced ability, which a jury is not supposed to possess, and which it is evident they cannot acquire through the bearing of any general dissertation on the law, however clearly it may be expressed. For these reasons, we think the prisoner entitled to a new trial."

In *State* v. *Matthews*, 78 N. C., 523, it is also said: "It will be seen, from the manner in which we have reviewed the instructions of the able and learned Judge who presided at the trial, that, in our opinion, a Judge who presides at a trial in which human life is at stake, does not fully perform the duties which his office imposes on him by stating to the jury, however correctly, principles of law which bear, more or less directly, but not with absolute directness, upon the issues made by the evidence in the case. To do that only is easy and almost mechanical. We think he is required, in the interest of human life and liberty, to state clearly and distinctly the particular issues arising in the evidence, and on which the jury are to pass, and to instruct them as to the law applicable to every state of the facts which, upon the evidence, they may reasonably find to be the true one. To do otherwise, is to fail to "*declare and explain the law arising on the evidence.*"

In *State* v. *Jones*, 87 N. C., 547, the Court declines to "inquire whether there is any error in the principle of law laid down," and grant a new trial simply on the ground that the Court had not stated the evidence and explained the law arising thereon. The Court say, that "in his Honor's main charge to the jury there is no pretence of an array of the facts, and therefore no application of the proposition of the law laid down to the different state of facts." Numerous cases, and particularly *State* v. *Rogers*, 93 N. C., 523, and *Holly* v. *Holly*, 94 N. C, 96, are directly and strongly to the same effect. Also, *State* v. *Rippy*, decided at this term.

We thus cite and quote largely from several cases to show that it is the indispensable duty of the Judges to observe, carefully, the statute cited, and that it is, as well, very important that they shall do so, and that a failure in such respect is ground for a new trial, when it appears that a complaining party may have suffered prejudice by such failure. This is too well settled in this State to be questioned, and we may

add that such observance of duty is essential to just trial by jury, in most cases. To discharge successfully such duty on the part of the presiding Judge, in many cases, requires the exercise of a high order of ability, much accurate knowledge of the law and its application, of the rules of evidence, of the nature and purpose of the evidence, and its bearing and application upon the trial of the issues. In the discharge of scarcely any of his high duties is he called upon to display greater talent and judicial skill than in his instructions to juries upon the law and evidence. Such duty is the more difficult because he cannot be governed in respect to it by any definite plan or formula. He must be governed by the nature, circumstances and evidence of each case before him. This Court has repeatedly, in the cases cited, and others not cited, pointed out, as definitely as practicable, the nature and compass of the duty and how it should be discharged. Discussing it, in *State* v. *Moses, supra,* Chief Justice RUFFIN. said: "If I were to lay down a rule growing out of this act of Assembly, I would say that it was, in general, this: that the *weight* of the evidence is for the jury; they hold the scales for that; but the nature, *relevancy* and *tendency* of the evidence it is competent for the Judge, and his duty, to explain. He is not only to recapitulate the testimony, but to show what it tends to prove, and he may recapitulate it in such order and connection as to give it the effect of proving the facts sought for, if, in itself, it be sufficient for that purpose. Whether it be sufficient is the province of the jury to determine, and, by this statute, it is their exclusive province, and the Judge cannot give his opinion, in aid of theirs, that it is not sufficient. But, if he is to speak at all (and this act makes it his duty to speak), it is not to be supposed that his interposition is for the sake of increasing the doubts of the jury or leaving them as they were. But this discussion of the case—fair, grave, sensible and important—may enable the jury better to decide upon the sufficiency of the proof,

though deprived of the advantage of his opinion on that point."

There can, therefore, be no doubt as to the imperative duty of the Court in the respect mentioned on jury trials, its nature and purpose, and the manner of its proper discharge.

Now, turning to the case before us, without scrutinizing the statement of the law of rape made by him, we feel constrained to say that, in our judgment, the learned Judge who presided at the trial failed to sufficiently "state, in a plain and correct manner, the evidence given in the case, and explain the law arising thereon." This appears from the instructions given and the assignment of error in respect thereto.

The prisoner's counsel, in apt time, requested the Court to direct the attention of the jury to specific parts of the evidence tending to discredit the evidence of the prosecutrix and instruct them as to its nature, bearing and application. The Court declined to do so " because he considered them unnecessary and substantially embraced in the charge he gave." The prisoner excepted, and afterwards assigned as error that the Court " did not, in charging the jury, eliminate the material facts of the case, array the state of facts on both sides and apply the principles of law to them, so that the jury might decide the case according to the credibility of the witnesses and the weight of the evidence." Thus the exception is broad and comprehensive.

Numerous witnesses were examined, both for the State and the prisoner. The evidence was voluminous, and in very material respects, directly and strongly in conflict. This was particularly so as to the evidence of the prosecutrix and the prisoner. There was evidence tending to corroborate that of the former and other evidence that of the latter, and likewise other evidence tending to discredit that of both the prosecutrix and the prisoner. Much of the evidence was peculiar to the crime of rape and required explanation as to

its nature and application.   A clear and lucid statement of the evidence, both for the prosecution and for the defence, and an explanation of its bearings and the law applicable in that connection, was necessary to enable the jury to settle and find material disputed facts of the evidence to be applied in reaching a just conclusion as to the issue submitted. Hence, the jury especially needed the important aid of the able Judge who presided at the trial—not to tell or intimate to them that a fact was or was not proven, nor to express an opinion as to the weight of the evidence; but to superintend and direct their inquiries by appropriate statements of the evidence, explanations and instructions.   Having stated the law of rape applicable and explained the issue submitted, he should have stated in an orderly manner the contentions and evidence of the prosecution—the principal evidence— all the material parts of it—and the corroborating evidence of whatever kind, and the law arising upon the same    The bearings of one part of the evidence upon another—its relations and purposes—should have been pointed out.  The jury could not -- did not—do this satisfactorily—no one but the learned Judge could have done it, and the law charged him to do it.   That done, the jury would have seen clearly, as the law contemplated they should do—the whole force and strength of the case for the State.

Then the Court should, in like manner, have stated the contentions and evidence of, and favorable to, the prisoner— the principal evidence—and all the corroborating evidence of whatever kind, and the law arising thereon.   In this connection, the Court, as requested to do, should, for proper purposes, have called the attention of the jury to the evidence as to the time, the public location of the house, and the chamber in the house where the alleged rape was committed; the presence of persons in and about and near the house who could have heard, but did not hear, any outcry of the prosecutrix; that after the alleged rape she washed

her face and arranged her hair in the prisoner's chamber, and at once joined her companions in the yard of the house and went a considerable distance with them, stopping on the way, without telling them that, she had been outraged. The Court should have explained the nature and purpose of this evidence, and told them that if it were true, the law made such facts and circumstances evidence—strong evidence—to the discredit of the prosecutrix; its weight, in view of all the other evidence, to be determined by them. Of course it should, likewise, in the proper connection, have stated the evidence intended to be explanatory and countervailing of the prosecutrix in such respects, and explained its bearings.

It appears that in the course of its charge—near its close—the Court read to the jury full notes of all the testimony in the cause, and told them that he did this to refresh, and not control, their recollections of the testimony; that it was their duty to remember the testimony, and they ought to rely in the last resort on their own recollections. It has been repeatedly decided that this is not a compliance with the statute, nor does it serve the important and necessary purpose intended by it. Nor did the very general remark of the Court that the evidence, other than that of the prosecutrix and the prisoner, was only " used by them as bearing on the question, whether this admitted carnal intercourse took place with the consent of the prosecutrix, or whether it was had by force, or such fear as he had before described, and against her will." The jury were substantially left to digest, classify and apply the voluminous, conflicting, evidence, much of it peculiar in its nature and force, without the valuable, necessary, superintending and directing aid of the Court in stating it in an orderly manner, pointing out its nature, purpose, bearing and application. There could scarcely be a case in which such aid would be more important.

We know, from our knowledge of trial by jury, our experience and observation, that in such cases as the present one, without the aid of the Court, as we have indicated, the verdict of the jury, however honest their purpose, is too often the result of a lack of intelligent comprehension and application of the evidence, because of their want of knowledge of the law and experience in the application of evidence. Trial by jury is worthy of all commendation as a method for the ascertainment of truth, but to make it efficient, and what the law contemplates it shall be, requires the superintending and directing aid of the Court.

We do not deem it necessary to advert to numerous other exceptions, most of which are without merit. One or two of them raise interesting questions that will hardly arise again.

There is error. The prisoner is entitled to a new trial, and we so adjudge.

Error.

AVERY, J. (concurring): Without filing a formal dissent to the opinion of the Court, I prefer to rest my concurrence in the conclusion reached upon different grounds.

Dr. Hines, an acknowledged expert in all matters pertaining to surgery and medicine, was offered as a witness for the State. After he had described in his examination-in-chief, the laceration he discovered in making a private examination of the prosecutrix, and expressed the opinion that her condition was caused by recent carnal connection with a man, he stated, in reply to a question on cross-examination, in reference to the nature of the apparent injuries to her person, that she presented just the appearance he would expect to find in a bride on the second or third morning after marriage, and that he heard no complaint of any bruises elsewhere on her body. On re direct examination the prosecuting attorney asked the witness the hypothetical question,

"Suppose the jury should find as a fact that there was a bruise on her right shoulder behind, finger-prints on both arms above the elbow, a bruise and blister on both elbows, a bruise on the small of her back and a red knot on the left side of her chest, would you expect to find these, together with the condition of the private parts, as testified to by you, in a young woman on the second or third day after marriage?" The witness was permitted by the Court, the prisoner objecting, to answer that he would not. The prisoner excepted. Another witness had testified that she found just such bruises as counsel mentioned on the person of the prosecutrix. This Court has held that the opinion of a well-instructed and experienced medical man upon a matter within the scope of his profession, and based upon personal observation and knowledge, should possess a higher value in determining the mental as well as the physical condition of one attended by him, than that of an unprofessional man, and should be considered carefully and weighed by a jury in rendering their verdict. *Flynt* v. *Bodenhamer*, 80 N. C., 205; *State* v. *Slagle*, 83 N. C., 630. If, therefore, the testimony was not competent, its admission was an error that tended to prejudice the rights and imperil the safety of the prisoner in a degree proportionate to the respect that the jury entertained for the opinion of a learned physician, as we must assume that they acted upon the idea that his skill and training fitted him in a peculiar manner for judging from such external bruises as were described by other witnesses, whether the admitted carnal connection between the prisoner and the prosecutrix was against her will or with her consent. Upon the decision of that question their verdict and his life depended. The Courts of this country have laid down very clearly the tests for fixing the limit to the peculiar domain of expert witnesses; yet, in applying the principles to particular cases, it has often been found difficult to distinguish between expert and ordinary testimony, especially to deter-

mine upon what subjects, and to what extent, educated and experienced surgeons should be allowed to give an opinion as witnesses. When the subject-matter of inquiry partakes of the nature of science, art or trade, persons possessing peculiar knowledge, skill or experience derived from previous practice, study or training, are allowed to give an opinion, if such opinion is calculated to assist inexperienced persons in arriving at a proper solution of the question. When, however, the injury is of such a nature that a person of sound judgment might be reasonably expected to arrive at a conclusion as correct and just without as with the advantage of such special study or experience, then the opinion of the expert witness is not admissible, because it gives no new light to the jury, who are presumed to be capable of bringing to their aid a fair share of intelligence, common sense and reason in drawing inferences from the facts and thereby reaching a verdict. Rogers on Expert Test., §§ 6 and 7; Lawson on Ex. and Op. Ev., Rule 28.

An apt illustration and application of the rule we have stated, is found in the case of *Cook* v. *State*, 24 N. J. Law, 843, where it was held that a physician was not competent to testify that a rape could not have been committed in a particular manner, that had been described by the prosecutrix. The Court say: "No peculiar knowledge of the human system was necessary to answer it. It was a mere question of relative strength or mechanical possibility, which an athlete or mechanic could have answered as well as a physician, and every man upon the jury as well as either." So it has been held, that what is the proximate cause of the injury is not a question of science or of legal knowledge, but is a fact to be determined by a jury from surrounding circumstances. *Railroad Co.* v. *Kellogg*, 94 U. S., 469.

The inquiry, then, which involves the test of the correctness of his Honor's ruling, upon the admissibility of the testimony of Dr. Hines is, whether his knowledge of surgery,

or experience in the practice of his profession, was such as to enable him to give a more satisfactory opinion than an intelligent and observant juror, as to the question whether the bruises upon the arms and back of the prosecutrix (which had not been examined by him, but which had been described by witnesses in his hearing), could have been caused by the voluntary coition of the prosecutrix, a girl of seventeen years, with the prisoner, on the floor of his own chamber, or whether these marks were unmistakable evidence of violence used by the prisoner to overcome resistance on her part. However the fact may be, we can see no reason why the physician should be able, from his training, to judge more accurately than any other intelligent man, whether the injuries to her person were not such as a bride might have suffered from the difficulties incident to her first act of carnal connection with her husband, at the same place. Yet, it is manifest that the jury may have been misled by considering the answer of the physician to the question objected to, as an expression of his opinion, founded upon his observation and experience, that the marks upon the body of the prosecutrix must have been made in a violent struggle to protect her virtue.

In the case of *State* v. *Slagle, supra,* the physician, an expert, was permitted to give the opinion that a certain bottle contained poisonous drugs, though he had not analyzed its contents, because he had testified that he could tell the ingredients from the smell, taste and appearance. At most, in doubtful cases of this kind, the testimony should be received by the Courts, as in *State* v. *Clark*, 12 Ired., 151, only "when assured by the physician that the principles of their science, applicable to a particular subject of inquiry established certain results, or "*when they swear*" they can draw the proposed distinction by reason of their peculiar professional skill and training.

In *State* v. *Sheets*, 89 N. C., 543, Justice ASHE, for the Court, says: "When the professors of science, as physicians, for instance, swear that they are able to pronounce an opinion in any particular, though they say that precisely such a case had not fallen under their observation or under their notice, in the course of their reading, it is competent to give in evidence their opinion." To the same effect is *Horton* v. *Green*, 64 N. C., 64.

It would have been easy to apply the test by which this Court determined the competency of expert evidence in the four cases cited, by asking the witness (Dr. Hines) if, from his observation in his practice and his reading, he thought he could tell whether the bruises described were such as could be caused by violence on the part of the prisoner, or whether they might have been naturally incident to a voluntary connection with a young woman. It may be that he would have answered, that his opinion upon such a subject was worth no more than that of a member of the jury, and in that event, we have no idea that counsel would have insisted upon propounding the question objected to. Where the Judge, being unlearned in any art or science like medicine, is in doubt whether a knowledge of such science is calculated to give one peculiar advantages in solving a question before a jury, he can be relieved of embarrassment by asking an acknowledged expert whether his professional training is such as to enable him to give a more satisfactory opinion on the subject of inquiry than an inexperienced man. This method of cutting the gordian knot in all doubtful cases of this kind has been sanctioned by this Court, and commends itself as reasonable and just.

While the jury was being selected, G. H. Womble, one of the special venire, was passed by the State to the prisoner, who challenged him for cause, and, after being sworn, was asked by prisoner's counsel the following questions:

. " Have you formed and expressed the opinion that the prisoner at the bar is guilty ? " To which the juror answered, " No."

He was then asked by prisoner's counsel, " Have you a present opinion that the prisoner is guilty ? " To this question the State objected. Objection sustained. Exception by the prisoner.

The juror was further asked, " Have you a prejudice against Roman Catholics ? " To which the juror replied, " No."

These three questions were the only ones put to the juror to try his indifferency, and the answer of " No " to the first and third questions was the only evidence before the Court as to his indifferency.

Another juror, named Penney, was asked the same questions, and the same answers were elicited, and a similar ruling and exception entered for refusal to allow the second question. Both Womble and Penney were peremptorily challenged, and the prisoner exhausted his peremptory challenges before the last juror was selected.

In entering upon the discussion of this exception, I promise that it is settled law—

1. That the prisoner had a right to ask the juror whether he had formed and expressed the opinion that the prisoner was guilty, and, if the juror answered in the affirmative, nothing more appearing, it was good ground of challenge; but if, on cross-examination, he had stated that his opinion was founded on rumor only, and that, upon hearing the evidence and the law applicable to it, he could still render a fair and impartial verdict, the prisoner would have had no ground of challenge. *State* v. *Benton,* 2 Dev. & Bat., 196 ; *State* v *Collins,* 70 N. C., 241 ; *State* v. *Bone,* 7 Jones, 121 ; Wharton Cr. L., 3069.

2. That a juror who had formed such a fixed opinion, that the prisoner was guilty, that it could not be so far removed, upon hearing the testimony from the witnesses

and the law from the Court, as to enable him to render a fair verdict, was absolutely disqualified to act, and no explanation would render him eligible if the prisoner objected to him.    Thompson & Merriam on Juries, §§ 207 (2), 215; *O'Mara* v. *Com.*, 75 Pa..St., 424; Wharton Cr. L., §§ 3068 and 3073; *State* v. *Kingsbury*. 58 Me., 239; Wharton Cr. L., 30, 96; *State* v. *Wilson*, 38 Ct., 126.

3.  It is equally well settled that, if a juror gives expression to an opinion of the prisoner's guilt, formed from hearing a preliminary trial, from conversation with the prosecutor, or with witnesses who state the facts as such, the prisoner has the unqualified right to object to him.    Thompson & Merriam on Juries, § 213, and authorities cited.    We may add that, when a juror has formed an opinion, and it is formed on information derived from the prosecutor, the witnesses for the State, from the testimony heard at a preliminary investigation, though he may not have expressed it, or though he may think that he would not adhere to it if the whole of the evidence on the trial should present other phases of the case, still he would not be an impartial juror, and the prisoner should not be compelled to accept him.    *Reynolds* v. *United States*, 98 U. S., 145; *Com.* v. *Webster*, 5 Cushing, 295; Thompson & Merriam on Juries, § 207 (2); *O'Mara* v. *Com.*, 75 Pa. St., 424; *Armistead* v. *Com.*, 11 Leigh's Rep., 657.

Where a juror was a member of the grand jury that found the bill of indictment, or a member of a jury who have already heard the case on a former trial, he is considered absolutely disqualified if objected to by the prisoner.    And where it appears, from an examination of the proposed juror, that he sustained any such relation to the parties or cause as would naturally lead him to prejudge the issue unfavorably to the prisoner, it should constitute a ground of principal challenge.    " The proposition that a challenge *propter affectum* involves matter of fact alone is not correct.

104—53

The point was very much considered in Benton's case, and it was there found that the Judge was bound to instruct the triers, as he would a jury, upon matter of law, whereby, supposing the facts to be ascertained, the juror offered, *though not standing in such a relation to the parties as to constitute a principal challenge, is yet held, in law, not to stand indifferent, because with some other connection with some person interested in the suit or question. And it was held, upon these authorities, that if the Court erred in such instruction to the triers,* the *decision* was the subject of review here." *Schorn* v. *Williams*, 6 Jones L., 577. If this Court can review errors of the Judge below in passing upon the different facts, or combinations of facts, that prove bias or prejudgment on the part of a juror, it is obviously improper to restrict counsel in eliciting the facts by his examination of the party challenged, so that he cannot present his objections intelligently.

Applying this principle to our case, suppose that the purpose of the counsel was to show, not only that the juror had formed an opinion, but that he had formed it from conversation with the prosecutor, or the witnesses, in reference to the evidence, or from hearing the investigation of the case before a Judge or Justice of the Peace, how could he develop the facts so as to make good his cause for principal challenge on one of these grounds, unless permitted first to ask the juror whether he has in fact formed such an opinion at all? Of course, where he had refrained from expressing it, his opinion could be ascertained only by asking such question of him on his *voir dire*, and as it constituted an essential foundation for finding out whether the juror was subject to principal challenge on one of the grounds mentioned, the question was clearly competent, and should have been allowed. And the authorities very generally sustain the view that it is competent, and the mere formation of the opinion disqualifies the juror, because it is necessary to

know whether any definite opinion has been formed preliminary to asking and ascertaining other facts that constitute good ground either for a principal challenge or one to the favor. Thompson & Merriam on Juries, sec. 208; *The People* v. *Christie*, 2 Abbot's Pr. Reps., 256; Wharton Cr. L., sec 3108; 1 Burr, 367; *The People* v. *Hettick*, 1 Wheeler's Cr. C., 399; *Com.* v. *Webster*, 5 Cushing, 298; *Trent* v. *Williams*, 39 Ind., 18; *Com.* v. *Knapp*, 9 Pickering's Rep., 496; *Romaine* v. *State*, 7 Ind., 63. If the question asked was necessarily incident to determining the prisoner's right to a principal challenge on any ground, it would be useless to discuss the point— to which we shall advert presently—whether the prisoner is required to give notice to the Court when he proposes to challenge to the favor. On the other hand, if it was proposed to find out whether the juror had formed the opinion that the prisoner was guilty preliminary to other questions to the favor, it would seem to be as effectual a denial of the right to examine into the qualification of the latter, as the ruling in *State* v. *Fuller*, 66 N. C., 632, that a defendant indicted for a misdemeanor had no right to challenge for cause. To the suggestion that the prisoner did not state that the challenge was to the favor, we reply that this Court sustained the opposite view in *State* v. *McAfee*, 64 N. C., 339, by sustaining the right to ask the juror the question whether the juror "believed he could do equal and impartial justice between the State and a colored man," in order "to test his qualification." That ruling is sustained in *The People* v. *Christie*, 2 Parker, 579, where the Court says "the prosecutor *at the trial* did not object that the challenge assigned against the juror should have been, not for principal cause, but to the favor, and therefore he cannot take such position here." See, also, *The People* v. *Rogers*, 5 Cal., 347.

Wharton (in his Work on Criminal Law, § 3125), says: "Challenges to the polls for favor take place when, though

the juror is not so evidently partial as to amount to a principal challenge, there are reasonable grounds to suspect that he will act under some undue influence or prejudice. The distinction, however, between challenges for favor and those for principal cause is so fine that it is practically disregarded. Consequently, what has already been said under the head of challenges for principal cause is to be examined and connected with challenges for favor." When the shadowy line that divides the two kinds of challenges cannot be marked out by Wharton with sufficient distinctness to treat the two separately, it would seem scarcely reasonable to make a prisoner's life depend upon the ability of counsel to give formal notice when he is on the eve of crossing it in the course of his examination of a juror. One of the reasons for losing sight of the difference between the two kinds of objections in later years, in this and some other States, is found in the fact that the Judge is substituted in the practice for the triers, and the prisoner is not required to sound the alarm by requesting the appointment of triers whenever he submits a challenge to the favor, as he was required under the old mode of proceeding to do. Wharton Cr. L., § 3063. This change of practice will doubtless, too, account for some confusion in the authorities. But we cannot afford to step backwards and adopt rules predicated upon reasons no longer operative.

SHEPHERD, J., (concurring): I concur with Mr. Justice AVERY that there should be a new trial, for the additional reason that the Court erred in excluding the question which the prisoner proposed to ask the juror.