STATE v. GOODE.

(Filed February 24, 1903.)

1. ARGUMENTS OF COUNSEL—*Improper Remarks of Prosecuting Attorney.*

Where an attorney for a defendant comments upon the fact that the state had not subpœnaed certain persons having knowledge of the crime, it is error to allow the solicitor to state that the witnesses were subpœnaed by the defendant and were in court, there being no evidence of these facts.

2. HOMICIDE—*Manslaughter—Evidence—Sufficiency.*

The evidence in this case is sufficient to be submitted to the jury as to the guilt of the defendants of manslaughter.

3. HOMICIDE—*Evidence—Reasonable Doubt.*

Where two persons are charged with being the cause of the death of a person, but not with conspiracy, the jury should acquit if they have a reasonable doubt as to which one inflicted the injury.

INDICTMENT against Demus· and Helen Goode, heard by Judge *George A. Jones* and a jury, at September Term, 1902, of the Superior Court of NORTHAMPTON County. From a verdict of guilty of manslaughter and judgment thereon, the defendant Demus Goode appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Peebles & Harris,* for the defendant.

CONNOR, J. The defendant Demus Goode was, together with Helen, charged with the murder of Estelle Stancell. The Solicitor said to the court that he would not ask for a verdict of murder in the first degree. The court, at the conclusion of the argument, withdrew from the jury the consideration of murder in the second degree. The defendants were convicted of manslaughter. The judgment was suspended as to Helen, and pronounced as to the defendant Demus, from which he appealed.

It was shown in evidence that the deceased was about eight

years of age; its parents were dead; Demus Goode took her about six months prior to her death. Mary Stancell, a witness for the State, testified that she went to the house of the defendant the day the child died. Some one asked the defendant Helen how the child was. She said she was on the bed. Margaret Stevenson asked if she were dead, and felt her body. She was cold. The defendant said nothing. Demus was in the house part of the time. Helen heard them say she was dead. Witness noticed scratches on face and on breast. Margaret said, here is a scar on breast made when she fell down stairs. Stairs are six or seven feet high. Scar on breast looked like torn places, like she had been stabbed. Burn on side of leg. Child was thin. It was not concealed. After its mother's death, child went to the defendants. They were no kin to it; defendant Helen said that the child had drunk molasses and it had affected her bowels, also that she had fallen from the loft. She had scratches on her face, looked like "jobbed places." John Stancell, uncle, and Mary Stancell, aunt of the child, and several others were present at the conversation. There was no attempt to have a secret burial.

W. W. Davis testified that defendant lived on his land; that child was puny; had scar on cheek. The morning the child died and before it died, Demus went to witness's house and said the child had made a fire and got burned. The child's mother died of consumption. Demus said that the child's bowels were out of fix and got some medicine from witness. Witness lived in sight of defendant's house and passed there frequently; never heard of child's being treated cruelly by defendants.

James S. Grant, the coroner, testified that he saw the body of the child a week after it was buried—it was exhumed; that it was terribly scarred over the whole body, looked like it had been whipped all over. It was almost a skeleton, was

very poor. Demus said that the cut on the head was made by a fall; said she got up and made a fire the night before she died; said he did not know how the scars came on her body. Witness said the scars looked like they were from four months to three days old.

Dr. W. H. Lewis testified that he saw the body about a week after it was buried; it was not decomposed; it was very thin; there was a wound on the head—old wound on top of head, was made some time before the child died. There were on the body a number of old and a number of new scars, looked like severe whipping; there were twenty-five recent scars and a great number of older ones; child looked as if badly nurtured. Witness could not say that any one or all of the injuries caused her death. All the wounds would or might cause its death. The defendants offered no testimony.

Defendant's first exception: One of the defendant's attorneys in his argument commented upon the fact that the Solicitor did not subpoena as witnesses an uncle and aunt of the child, who were present when it died. The Solicitor replied, and was permitted to state that these witnesses were in the court room, subpoened by the defendants and could have been called by the defendants. Defendants objected and upon his Honor's refusal to stop the Solicitor, excepted.

In this there was error. There was no evidence that the persons referred to were present or that they had been subpoened by the defendants. The defendant's counsel had not said so.

It is well settled by the decisions of this court that the failure to summon witnesses, who are shown to have been present at conversations regarding the matter in controversy or have knowledge in respect to controverted facts or questions in issue, is a proper subject for comment by counsel; or a failure to examine witnesses who have been summoned or sworn is likewise a proper subject of comment. Rodman, J.,

in *State v. Jones,* 77 N. C., 520, says: "We think the Solicitor had a right to comment upon the fact that the defendant, *after having sworn Whitley,* as a witness, declined to examine him."

In *State v. Kiger,* 115 N. C., 746, it appeared that the defendants had summoned ten witnesses and had not called them. Comment upon such fact was held proper.

The defendant's case is distinguished from these in that there was no evidence of the fact stated by the Solicitor. The defendants' counsel had stated no fact in regard to the matter. It was in evidence on the part of the State that the persons referred to were present at or about the time the child died, and conversations regarding the cause of its death were had with the defendants. His comment was, so far as we can see, based upon the assumption that the persons had not been summoned by the State. This did not open the door to the Solicitor to make the statement complained of. It would have been entirely competent for him, by way of reply, to have suggested that the defendants had equal opportunity with the State to have summoned these persons. In stating that they had been summoned and were then present clearly violated the rule laid down by this court in *State v. O'Neal,* 29 N. C., 251, in which it is said: "It is the right and duty of the presiding judge, if counsel state facts are proved upon which no evidence has been given, to correct the mistake, and he may do so at the moment or wait until he charges the jury." His Honor not only failed to do either, but, after objection by defendants' counsel, declined to do so. We may not speculate upon the effect the statement of the Solicitor made upon the minds of the jury. It was error to permit it, and calculated to prejudice the jury against the defendant. For this error he is entitled to a new trial.

While this ruling is sufficient to dispose of this appeal, we think it proper to notice two other exceptions appearing in

the record, which were argued by the Attorney-General and the defendant's counsel.   The defendant requested the court to charge the jury that if they believed the evidence they will find the defendants not guilty.   His Honor declined to so instruct the jury, but did charge them that if the defendants undertook to act *in loco parentis* to the child, Estelle Stancell, and that if they were so grossly careless and negligent in their care of the child, as a result of which the child suffered cruel and unusual punishment so that her death ensued, they would be guilty of criminal negligence and the jury should convict of manslaughter; that if the defendants or either of them treated the deceased in a grossly cruel and negligent manner or in such manner as to show a wanton and reckless behavior and total disregard of the rights of others, or if they inflicted cruel and unusual punishment out of proportion of the offense committed, and the death of the deceased resulted from such cruel and negligent treatment, the defendant guilty of such cruel and negligent treatment, would be guilty of manslaughter.   If both the defendants were guilty of such treatment towards the deceased and death resulted therefrom, then their verdict would be guilty as to both.

There was ample evidence to be submitted to the jury, and his Honor properly refused to instruct them as requested. The testimony, if true, shows that a brutal and criminal homicide had been committed, and that an infant of eight years without parents living was the victim.   The defendant has no cause to complain of the law in that respect laid down to guide the jury.   It is by no means clear that the court should not have instructed the jury that there were phases of the testimony, which, if true, constituted murder at least in the second degree.   It is difficult to conceive how bruises, scratches and wounds, such as those described by the coroner and Dr. Lewis, could have been inflicted upon the body of the deceased child as a punishment, or otherwise

than as an exhibition either of a brutal passion or a wicked and malicious heart fatally bent upon mischief. The condition of the wounds shows that a course of systematic cruelty had been practiced upon the helpless victim. One witness says that they appeared to have been from four months to three days old. Dr. Lewis says the wound on the head was an old one. The conduct of the defendants at the time of the death of the child showed a callous indifference to its condition and suffering. When asked, how the child was, Helen said "She is on the bed." She was then cold in death. "The exposure or neglect of an infant or other dependent person resulting in death, if an act of mere carelessness wherein danger to life does not clearly appear, the homicide is only manslaughter, whereas if the exposure or neglect is of a dangerous kind, it is murder." 2 Bishop New Criminal Law, star page 764.

We find no error in the instructions given by his Honor to the jury in regard to the burden of proof, or in the manner in which they should consider circumstantial evidence, or the benefit to which the defendants were entitled of a reasonable doubt.

The defendants requested the court to instruct the jury that if the jury are in doubt as to which one of the defendnats struck the blow or blows causing the death of the deceased, and have reasonable doubt as to whether Demus Goode inflicted the injury or as to whether Helen Goode inflicted the injury, then their verdict should be not guilty as to both. In response to this prayer his Honor charged the jury: The jury will find from the evidence beyond a reasonable doubt what each of the defendants did, and from the facts so found the jury will determine under the charge of the court whether or not such defendant is guilty. The evidence of one should not be used against the other.

The language of the prayer is taken from and approved by

this court "as an abstract proposition of law," in *State v. Finley,* 118 N. C., 1161, 1170. The defendants were not charged in the indictment with conspiracy to kill or cause the death of the deceased. There was no evidence of the relation which the defendants bore towards each other, or the age of Helen. As the case goes to the court below for a new trial, we deem it proper to say that the court should have given the instruction asked, and proceeded to explain to the jury, in the light of the testimony and its several phases, the law in regard thereto. If the jury should find that the deceased came to her death from criminal neglect to provide food or medicine, the question would be presented as to the liability of the defendant Demus and his relation to the child, also to what extent Helen was responsible for the criminal negligence of Demus. If on the contrary they should find that the child came to its death by blows and positive acts of cruelty, they should be called upon to ascertain which, if either, of the defendants inflicted such blows, and how, if at all, the other was connected with or related to the crime. We do not see how it is possible that a child of eight years of age could by disobedience or otherwise merit such punishment as is indicated by the wounds found upon its body. As was well said by the Attorney-General, happily for the good name of the State no similar case is to be found in our Reports. In view of the several phases of the testimony upon which the guilt or innocence of the defendants, or either, is dependent, we do not think the charge as given is fully responsive to the prayer, or a compliance with the rules laid down by this court, or the provision of the statute. The Code, Sec. 413; *State v. Dunlop,* 65 N. C., 288; *State v. Jones,* 87 N. C., 547; *State v. Boyle,* 104 N. C., 800.

PER CURIAM—There must be a

*Venire de Novo.*