## STATE v. DORSEY RIDEOUT AND ROBERT HEDGEPETH.

(Filed 18 February, 1925.)

**1. Criminal Law—Evidence—Nonsuit—Statutes—Questions for Jury.**

Defendant's motion as of nonsuit in a criminal case, under the statute (C. S., 4643), will be denied if construed in the light most favorable to the State it is legally sufficient to convict, its weight and credibility being for the jury to determine.

**2. Same—Conspiracy—Homicide.**

Where two defendants are tried for a homicide, the evidence is sufficient to convict both equally of the offense as principals if it tends to show they were both engaged in the unlawful operation of a whiskey still and had agreed that they should have a gun at the place to frighten away any one who attempted to interfere with them, which resulted in one of them firing upon and killing a person who had endeavored to stop them with a pistol, the killing being the consequence of a conspiracy to do an unlawful act.

**3. Appeal and Error—Instructions—Record—Presumptions—Prayers for Instructions.**

Where the judge's charge is neither excepted to nor set out in the record on appeal, it will be presumed that it was correctly given upon the evidence in the case; and where exceptions for failure to give certain prayers for instructions are insisted upon, on appeal, the refusal to give them will not be held for error, it being required only that the judge give them in his own language substantially as prayed for.

APPEAL by defendants from judgment rendered by *Cranmer, J.,* at November Term, 1924 of NASH.

Defendants were indicted for the murder of Alex Hedgepeth, on the night of 31 May, 1924, in Nash County. After arraignment of defendants, who each entered a plea of not guilty, the solicitor for the State announced that he would not ask the jury to convict defendants of murder in the first degree, but that he would contend that defendants were guilty of murder in the second degree, or of manslaughter. The jury, having heard the evidence, the arguments of counsel for the defendants, and of the solicitor for the State, and the charge of his Honor, returned a verdict of guilty of manslaughter as to both defendants. From the judgment upon this verdict, that each defendant be confined in the State's Prison for a term of not more than seven and not less than five years, both defendants appealed. Assignments of error, upon which motion for new trial is made, are discussed in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Thorne & Thorne for defendant Dorsey Rideout.*

*Harold D. Cooley for defendant Robert Hedgepeth.*

CONNOR, J.   Evidence offered by the State tends to show facts as follows: Alex Hedgepeth, while standing at the edge of the woods, on the lands of Roy Howell, in Nash County, observing two men at work at a whiskey still, located in said woods, between 9 and 10 o'clock on the night of 31 May, 1924, was wounded on the head by shot fired from a gun.   He fell to the ground and died almost immediately.   His death was caused by the gunshot wound.   The shots which inflicted the fatal wound were fired from the direction of the whiskey still.   Only one gun was fired from that direction.   Almost simultaneously with the firing of this gun, Alex Hedgepeth fired a gun which he held in his hands as he stood observing the men at the still.   Two shots in all were fired, deceased firing one of them, the other coming toward him from the direction of the still.   The sound was as if both barrels of a double-barreled gun had been fired at the same time.   Deceased was wounded on the left side, near the top of his head.

The whiskey still was located on a branch down in a thick place in the woods.   It was surrounded by a heavy growth of large trees, among which was a thick undergrowth of alder bushes.   These alder bushes extended from the place where the still was located toward an open space under the trees.   From this open space toward the place where Alex Hedgepeth was standing at the time he was killed there were alder bushes and other undergrowth.   A large open field extended back of the place where he was standing.   On the other side of the woods, across the branch from where deceased was standing, was a public road.   It was a starlight night.

Alex Hedgepeth and his nephew, G. A. Nelms, a witness for the State, having received information that a whiskey still was located in the woods on Howell's land, had decided during the late afternoon of 31 May, 1924, to go down to the woods to the still.   Before starting to the still, Nelms went to the home of Robert Hedgepeth; he was not at home.   Alex Hedgepeth borrowed a gun from one Louis Harper and took this gun and six shells with him.   When witness and Alex Hedgepeth got near the woods, it was dark.   They saw a light moving about in the woods.   They squatted down at the edge of the woods, and soon heard some one, opposite them, whom witness Nelms testified that he recognized as defendant Robert Hedgepeth.   Soon thereafter witness heard some one coming right up from near the edge of the woods.   This person passed near where witness and Alex Hedgepeth were crouching down.   He whistled and was answered by some one in the woods where the light was.   He started through the woods toward the light but soon stumbled and fell down.   Witness heard a sound as of the rattling of jugs and bottles in a sack.   He heard a voice in the woods which witness recognized as the voice of defendant, Dorsey Rideout.   Witness had

known Rideout for six or eight weeks. A lantern then came from the woods to the place where the person had fallen down and witness heard voices of persons talking. Witness then saw defendant, Robert Hedgepeth, go back into the woods where the light was. As witness and deceased were squatting at the edge of the woods, witness heard a noise, as of a pot boiling. He and deceased, after a few moments, slipped along toward the light in the woods. They then saw a still in operation. Witness recognized defendant, Dorsey Rideout, who was standing near the still. Witness did not see anything in the hands of defendant, Rideout. Deceased then asked witness for a shell, stating that he was going to shoot at the still. During this time witness and deceased were talking and whispering to each other. In a few minutes they heard a car coming on the road on the other side of the branch. At this time they could see the still by the light in the woods. As the car came up, deceased said to witness: "There come some more; let's get them all. Don't you move until I say 'Hands up,' then keep all the noise you can like there are a dozen coming." The car stopped and deceased slipped away through the woods toward the still. Witness then saw defendant, Rideout, come out to one side of the still, walking toward the open space between deceased and the still. Rideout stopped and stood in this open space. Deceased then said, "Hands up." Witness saw Rideout raise up his hands and then the fire from a gun coming from the woods toward deceased. Deceased fired at the same time. Witness at no time saw a gun in the hands of Rideout who was still standing in the open space at the time the gun was fired from the woods, just exactly in line between deceased and the place from which the shot came. There were alder bushes and undergrowth behind Rideout. When Rideout left the still, witness saw defendant, Robert Hedgepeth, standing on the right of the still. He made a noise as if blowing out a lantern and then walked away from the still. That was just before the shooting. Witness did not see Robert Hedgepeth at the moment the shots were fired, nor could he testify where he was at the time. Witness was positive that Rideout was standing in the open space at the time the shot was fired which wounded Alex Hedgepeth. Immediately after the gun was fired witness saw defendant, Robert Hedgepeth, some distance away from where the gun flashed in the woods. He was going from the still in a direction opposite from the place where deceased was killed and toward his home. Both defendants had left the still as soon as the car came up on the public road and before the shooting.

After Alex Hedgepeth fell to the ground, witness went to the home of his uncle, George Hedgepeth, and there told him what had occurred. He then went to the home of Robert Hedgepeth. Robert Hedgepeth came out of the house. He denied that he knew anything about the

still or the shooting. The next day, however, he admitted part of it and later at.the preliminary trial told what he knew about it. Alex Hedgepeth was not an officer at the time he was killed and neither he nor witness had any warrant for the arrest of either of the defendants.

N. A. Nelms, who testified that he was with Alex Hedgepeth just before he was killed, told George Hedgepeth, brother of the deceased, that Rideout killed Alex Hedgepeth. He also testified at the trial, in answer to direct question, that Rideout killed the deceased.

Dorsey Rideout had been employed by Roy Howell as a laborer on his farm for six or seven weeks. He had told Rideout that he had been informed that Rideout had put up a whiskey still on his land and that he must get it away from there. On the night of 31 May, 1924, Howell was called from his house by George Hedgepeth, brother of Alex Hedgepeth. Just at this time Rideout came to Howell's back door, calling him. In consequence of what George Hedgepeth and Rideout told him, Howell went with Hedgepeth and defendant, Rideout, to the place where the whiskey still was located. There they found the body of Alex Hedgepeth and took it to his home. Rideout rendered all the help he could. Robert Hedgepeth, a brother of Alex Hedgepeth, deceased, did not show up that night.

The next day a suit of overalls was found under the barn or crib on the west end of Howell's barnyard. These overalls were identified by the witness, Clinton Hands, as the same worn by Robert Hedgepeth at the still on the night of the homicide. Tracks were discovered leading in the direction of Robert Hedgepeth's house as of a man running from where the overalls were found to the path running east and west from George Hedgepeth's to the public road. A gun was found in the path where these tracks came into it from the direction of the barn. This gun was identified by Clinton Hands as the gun he had loaned to Dorsey Rideout on the night of the homicide. The tracks from the place where the overalls were discovered to the road were in direct line toward the home of Robert Hedgepeth. There were no tracks leading from the place where the gun was found to Roy Howell's house where Rideout lived. A person who had gone to the crib where the overalls were found and then to the path where the gun was found and then to Roy Howell's house would have gone out of his way 58 yards.

Clinton Hands late in the afternoon of 31 May, 1924, loaned to Dorsey Rideout his gun. Clinton Hands went with defendants, Dorsey Rideout and Robert Hedgepeth, to the whiskey still about dark. When they got to the woods, the lantern carried by Rideout was lit. Rideout did not at this time have the gun in his hands. After arriving at the still, Rideout and Hedgepeth agreed to operate the same that night together on shares. Rideout then went to Howell's house to get over-

alls for Hedgepeth. These are the same overalls found the next day under the corner of the crib in Howell's barnyard. Clinton Hands left the still before defendants, Rideout and Hedgepeth, began to operate it. At this time the gun which he had loaned to Rideout was near the still. About ten o'clock that night Rideout went to the home of Clinton Hands and told him that Alex Hedgepeth had been killed near the still. Hands then went with Rideout, George Hedgepeth and Roy Howell to get the body.

On the day after the homicide, a shell was found in the alder bushes back of the open space where defendant, Rideout, was standing at the time Alex Hedgepeth was killed. The alder bushes between the place where the shell was found and the open space in which Rideout was standing were shot away in the direction of the place where Alex Hedgepeth was killed.

At the close of the State's evidence, tending to establish the facts as above stated, both defendants moved for judgment of nonsuit, under C. S., 4643. This motion was denied. Each defendant excepted. Defendant, Rideout, offered evidence, and thereby waived his exception. *S. v. Killian,* 173 N. C., 792. Defendant, Hedgepeth, introduced no evidence, and claims the benefit of his exception, now on his appeal to the Supreme Court.

Applying the well-settled rule, uniformly and consistently enforced by this Court, to the consideration of the evidence offered by the State, upon defendant's motion, we find no error in the refusal of his Honor to allow the motion. "The motion to nonsuit requires that we should ascertain merely whether there is any evidence to sustain the allegations of the indictment. The same rule applies as in civil cases and the evidence must receive the most favorable construction in favor of the State for the purpose of determining its legal sufficiency to convict, leaving its weight to be passed upon by the jury." *S. v. Carlson,* 171 N. C., 818. If there is evidence from which the jury could find as a fact that defendant, Hedgepeth, fired the gun which inflicted the fatal wound upon Alex Hedgepeth, it is sufficient to be submitted to the jury upon the issue between the State and this defendant. The primary question involved in this issue is: Did defendant Hedgepeth fire the gun which caused the death of deceased? The probative force of the evidence, as well as the credibility of the witnesses, was for the jury to determine. There was evidence sufficient to sustain the contention of the State that this question should be answered in the affirmative. This being true, it is unnecessary, upon consideration of this motion, to determine whether or not there was evidence also of a conspiracy between Hedgepeth and Rideout to do an unlawful act, and whether such act was *malum per se* as well as *malum prohibitum* or not. Nor is it material to the

STATE *v.* RIDEOUT.

question, involved in the consideration of this motion, to determine, whether, if there was sufficient evidence of such conspiracy, the act of firing the gun, which caused the death of deceased, was so related to or connected with the unlawful act which was the object of the conspiracy as to make the conspirator who did not fire the gun equally guilty with his coconspirator who did fire it, and thus cause the death of the deceased. Upon the evidence, the well-recognized principle, that when two persons are charged with being the cause of the death of a person, but not with conspiracy, the jury should acquit if they have a reasonable doubt as to which one inflicted the injury, is not necessarily applicable to the consideration of this exception by Hedgepeth. *S. v. Goode,* 132 N. C., 982. The exception was not well taken, and the assignment of error is not sustained.

Defendant, Dorsey Rideout, as a witness in his own behalf, testified that he had set up the still in the woods on Roy Howell's land; that a few days before 31 May, 1924, Howell had requested him to move the still off his land and that he had promised to do so; that on 31 May, 1924, he made an agreement with defendant, Robert Hedgepeth, to move the still that night; that Hedgepeth told him during the afternoon that some young men in the neighborhood had discovered the location of the still and intended to go down there and break it up or run him away from it; that Hedgepeth suggested that they borrow a gun from Clinton Hands to scare these young men if they came and interfered with them while at the still; that acting upon this suggestion he borrowed a gun from Clinton Hands and got some shells from Mrs. Roy Howell; that Hedgepeth took the gun and shells when they started to the still and carried them there; that when they reached the still he and Hedgepeth agreed to run off some whiskey before moving the still; at Hedgepeth's request he went back to Roy Howell's and got some overalls which Hedgepeth put on; that they then went to work at the whiskey still; Hedgepeth set the gun down next to the whiskey still and it remained there until the shooting; that witness was standing 8 or 10 feet from the still at the end of a pipe which emptied into a little branch, watching it to see if whiskey came out at the end of the pipe; that while thus engaged he heard some one in an automobile drive up on the west side of the branch and stop; that he heard the sound as if several persons were coming from the automobile into the woods; that at this moment he had a lantern with which he started through the alder bushes, trying to blow it out; that he finally blew the lantern out and placed it about 18 feet from the whiskey still in the alder bushes; that defendant, Hedgepeth, at this time walked away from the still through the bushes in a direction about midway between the line which witness had followed and where the deceased was after-

wards found lying on the ground; that just as Hedgepeth disappeared in the alder bushes, a few feet away, witness heard some one cry out "Hands up" and at this moment saw the flash of a gun from the direction where Alex Hedgepeth stood; that almost at the same time there was an answering flash and noise caused by the firing of a gun from the alder bushes from the direction in which the defendant Hedgepeth had just gone; that in a moment defendant Hedgepeth came running back from that direction and he and Hedgepeth ran together through the woods; that at this time witness did not know that anybody had been hurt; that he then went straight home to Roy Howell's house and later returned with him and George Hedgepeth to the place where the whiskey still was located; that they found Alex Hedgepeth lying on the ground and took him to the house; that witness did not have a gun in his hands at any time that night.

There was other evidence offered by the defendant which, however, is not material. At the close of all the evidence, both defendants renewed their motion for judgment of nonsuit. This motion was denied and each defendant excepted. Defendant, Rideout, however, in his brief abandons his assignment of error based upon this exception. The exceptions of the defendant, Hedgepeth, is not sustained.

In apt time, defendant Rideout requested the court to instruct the jury as follows: "If the jury find from the evidence that the defendants were acting independently of each other at the time of the killing, that is, there was no common design, conspiracy or agreement to kill and the jury cannot actually identify from the evidence or find beyond a reasonable doubt which one of the defendants fired the shot that killed Alex Hedgepeth, that it would be the duty of the jury to render a verdict of not guilty as to both the defendants, even though the jury believed one of the defendants killed the deceased, but could not say from the evidence which one of them did it."

His Honor refused to give this instruction. Both defendants excepted, and assign such refusal as error.

The instruction in so far as it embodies the proposition that in the absence of evidence of a conspiracy, if two persons are indicted for murder or other unlawful and felonious homicide, and the jury find from the evidence, beyond a reasonable doubt, that one of the defendants killed the deceased, but are in doubt, upon all the evidence, as to which of the defendants caused the death of deceased, they should acquit both, is correct. It is fully supported by the authorities. In *S. v. Finley,* 118 N. C., 1162, *Justice Montgomery* says of a prayer for instruction, based upon this proposition, "The prayer in the abstract embraces a sound doctrine of law; but where a conspiracy or an agreement between two or more to do an unlawful act has been proved, and as a

result and consequence thereof a crime is committed, the rule is different and it is altogether an immaterial matter which one of the actors actually commits the deed; they are all principals and all guilty of the offense." In that case there was no evidence, or contention on the part of the State, that the two defendants had entered into a conspiracy or agreement to kill the deceased; there was evidence tending to show and it was contended by the State that defendants had entered into a conspiracy to worry, annoy and tease, to oppress, assault and strike deceased. While engaged in accomplishing the purpose of this conspiracy, the fatal blow was struck by one of the conspirators. The refusal of the court to instruct the jury, as requested by the defendants that "they must find beyond a reasonable doubt, if they should find a conspiracy existed at all, that such conspiracy was to commit the offense charged in the indictment, to wit: murder of the deceased, and that no evidence of a common design, or purpose to tease, worry and have fun out of deceased would be such common design and purpose as would warrant the jury in finding a verdict against Finley in case they found that he did not strike the blow," was sustained, with the comment as above stated. *Regina v. Cox,* 4 C. and P., 583, is cited as authority for the rule, approved by the Court, that if two persons are engaged in the pursuit of an unlawful object the two having the same object in view, and in the pursuit of that common object, one of them does an act which is the cause of death, under such circumstances that it amounts to murder in him, it amounts to murder in the other also." *S. v. Simmons,* 51 N. C., 21; *S. v. Gooch,* 94 N. C., 987; *S. v. Goode,* 132 N. C., 988; *S. v. Kendall,* 143 N. C., 663; *S. v. Powell,* 168 N. C., 134; *S. v. Orr,* 175 N. C., 773.

It is not contended by the State in this case, that defendants, Rideout and Hedgepeth, had entered into a conspiracy or agreement to kill Alex Hedgepeth; it was contended and there was evidence to support the contention, that these defendants had entered into a conspiracy or agreement to operate the whiskey still for the purpose of manufacturing intoxicating liquor, and also to assault and drive away by shooting at them with a gun, any persons who interfered with them; that while both defendants were engaged in the unlawful act of making whiskey, one of them, with the gun and shells which had been provided by both defendants, fired at the deceased, who had called to them "Hands up" and inflicted upon deceased the mortal wound. The error in the instruction requested is that it is predicated upon the absence of evidence of a conspiracy to kill the deceased, and implies that in the absence of a finding by the jury of a conspiracy *to kill,* the act of the defendant who fired the gun, assuming that the jury shall find that one of the defendants did fire it, was independent of his codefendant. Assignment

of error based upon exception to the refusal to give this instruction is not sustained.

Defendant, Rideout, further requested the court to instruct the jury as follows: "If the jury find from the evidence the defendant Rideout was present or very near by at the time of the firing of the shot that killed Alex Hedgepeth, but did not fire such shot himself, and that Rideout gave no aid or encouragement to the person firing such shot, either before or at the time thereof, then he would not be guilty, either as principal or accessory, and the jury should acquit, merely being present when the crime was committed or even standing by and seeing the crime committed and doing nothing to prevent it would not make defendant Rideout guilty of the crime either as principal or accessory."

Defendant Rideout excepted to the court's refusal to give this instruction, and assigns same as error.

This instruction is correct as an abstract proposition of law, and is supported by 29 C. J., 1069; *S. v. Matthews,* 78 N. C., 523; *S. v. Ta-cha-na-tah,* 64 N. C., 614; and *S. v. Hildreth,* 31 N. C., 440 are cited to support the text. Although Rideout gave no aid or encouragement to the person who shot and mortally wounded deceased to fire the gun, either before or at the time the gun was fired, if he had previously entered into a conspiracy with the person who fired the gun to do an unlawful act, and the firing of the gun at Alex Hedgepeth was an act connected with or growing out of the doing of the unlawful act, and done in furtherance of or in consequence of the unlawful act, the jury could not acquit him. If the killing of Alex Hedgepeth was a crime and defendant Rideout was present at the time and place of its commission by preconcert with the perpetrator of the crime, he was a participant in the crime. 29 C. J., 1070, citing *S. v. Jarrell,* 141 N. C., 722, "When the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as encouraging." 1 Wharton Cr. Law, sec. 211. The refusal of the court to give this instruction was not error, and the assignment of the same as error is not sustained.

Defendant Rideout requested the court to instruct the jury as follows: "If the jury find from the evidence that the defendant Rideout borrowed the gun and shells with which Alex Hedgepeth was later killed, but did not fire the shot that killed the deceased, and that at the time he procured the gun, or later before the homicide, he did not share in the criminal intent of the direct actor he would not be guilty and the jury should acquit him."

To the refusal to give this instruction, defendant Rideout excepted and assigns same as error. This assignment cannot be sustained. Upon

the evidence, Rideout's guilt is not to be determined solely by his sharing in the criminal intent of the person who fired the gun. If the firing of the gun at Alex Hedgepeth was an act connected with, related to and in consequence of the unlawful act which Rideout and Hedgepeth had conspired to do, and the firing of the gun was a crime, committed by his coconspirator in furtherance of the unlawful conspiracy, Rideout was, in law, a participant in said crime, and the jury, upon finding these facts from the evidence, could not acquit him.

Defendant Rideout further requested the court to instruct the jury as follows: "If the defendant at the time of or just before the shot was fired that killed deceased were engaged in operating a whiskey still, this fact does not of itself affect the question of the guilt or innocence of the defendants, one way or the other. It is merely a circumstance that may be considered by the jury along with other circumstances in arriving at the truth of the matter and as influencing the motive of the defendants, and the probative value of their testimony."

To the refusal of the court to give this instruction, both defendants excepted. They assign this refusal as error. We cannot so hold. The fact that defendants were engaged in the operation of a whiskey still, in itself an unlawful act, after having jointly prepared themselves to resist interference, by the use of a gun and shells—all as a result of preconcert and conspiracy by defendants—could not be thus limited by the court as a mere circumstance to be considered by the jury as affecting the probative value of their testimony, or the motive with which Alex Hedgepeth was killed. Assuming that only one of defendants shot the deceased, as the evidence tends to show, the fact that both defendants had entered into a conspiracy to do an unlawful act, and were engaged in accomplishing the purpose of the conspiracy, when the act was done by one of them, which caused the death of Alex Hedgepeth, is the very heart of the State's case as against the defendant who was not the direct actor.

Defendant, Hedgepeth, in apt time presented to the court his prayers for instruction; to the refusal of his Honor to give these instructions, defendants excepted.

We do not deem it necessary to state or discuss these prayers *seriatim.* Some of them are given substantially in the excerpt from the judge's charge which appears in the case on appeal. The full charge is not set up and the presumption is that it was correct. The defendants, by their prayers for instructions, presented to the court the proposition that although the jury might find that both defendants had entered into a conspiracy to manufacture intoxicating liquors, an unlawful act, and although they might find that one of the defendants fired the shot which killed Alex Hedgepeth, if they were unable to find beyond a reasonable

doubt which defendant fired the shot, they should acquit both for the reason that the act of shooting the deceased was not, as a matter of law, connected with, related to or in consequence of the unlawful act in which they were engaged by preconcert. Upon the evidence in this case this is not a correct proposition. If the jury found from the evidence, as their verdict indicates they did, that one of the defendants shot Alex Hedgepeth and thereby killed him with a. gun and shells which both defendants had carried to the whiskey still with a common purpose, then it was for the jury to determine whether this act was so related to the unlawful act which the defendants had conspired to do as that the conspirator who did not fire the shot was equally as guilty as his co-conspirator who did fire the shot. It is stated in the case on appeal, prepared by defendant's counsel and accepted by the solicitor for the State that "his Honor in his charge to the jury fully and fairly stated the contentions of the State and defendants. He defined the crime of murder in the second degree and manslaughter and charged the jury that they must be satisfied beyond a reasonable doubt that the killing of Alex Hedgepeth was done by the two defendants or by one of them." As the full charge is not included in the case on appeal, we must assume that his Honor stated the contentions of the State and the defendants as to the law as well as to the facts involved in the trial.

Several of the instructions requested contain correct statements of general principles of law but we cannot hold upon the entire record that the failure to give these instructions in the exact language in which they were framed is reversible error.

After a full and careful consideration of the entire record we are of the opinion that the judgment of his Honor should be affirmed. There is

No error.