STATE v. AMOS JONES, EMORY BURNS, GUILFORD SEYMOUR, AND W. H. FRY.

(Filed 11 July, 1934.)

1. **Constitutional Law F c: Criminal Law H c—Refusal of motion for continuance held not to deny accused's right of confrontation.**

Appealing defendant was charged in a recorder's warrant with being an accessory after the fact and the other defendants with murder. About a month later a bill was submitted to the grand jury charging the other defendants with murder, and during the jury's consideration of the bill the name of the appealing defendant was inserted therein, and the bill charging all the defendants with murder was returned "a true bill" on Tuesday and defendants placed on trial the following day. Appealing defendant made a motion for a continuance in order to prepare his case, and the motion was refused. *Held*, it cannot be determined as a matter of law from all the facts that the refusal of the motion for continuance deprived defendant of his constitutional right of confrontation, and defendant's exception is not sustained.

2. **Criminal Law C a: I g—Defendant held not entitled to instructions relating to innocent by-stander under evidence in this case.**

The State's evidence, controverted by testimony of the appealing defendant, was to the effect that all three defendants, while hunting with guns, went upon deceased's lands, with animus, and that all three defendants actively engaged in an assault upon deceased, one or more of defendants retaining his gun, and that one of them fatally shot deceased. The appealing defendant requested instructions that his mere presence at the scene of the homicide would not make him guilty of aiding and abetting in the absence of conspiracy, if he gave no aid or encouragement at or before the commission of the crime, even though he knew the crime was to be committed and approved of its commission, if his approval was not communicated to the perpetrator, and that if three persons are charged with killing another, but not with conspiracy, the jury should acquit if they have a reasonable doubt as to which one

inflicted the injury. The requested instructions were refused and defendant excepted and appealed. *Held*, the exception cannot be sustained, for, although the requested instructions are correct as abstract principles of law, the State's evidence disclosed that defendants were acting in unison, making it immaterial which defendant actually fired the fatal shot, even though the bill of indictment did not charge conspiracy.

SCHENCK, J., took no part in the consideration or decision of this case.

CRIMINAL ACTION, before *Sink, J.*, at January Term, 1934, of MOORE.

J. M. Rinehart was killed on or about 30 November, 1933. On the 1st day of December thereafter a warrant was issued by the clerk of the recorder's court charging Amos Jones, Emory Burns and Guilford Seymour with murdering Rinehart and charging that Fry aided and assisted Jones in escaping, and hence as accessory after the fact. Thereafter at the January Term, 1934, of the Superior Court the grand jury returned a true bill against the four defendants, charging them with the murder. The record shows the following: Jones and Burns were held by the coroner without bail and Fry was recognized by the coroner as a witness for the State. Subsequently a warrant was issued from the recorder's court of Moore County, charging Jones, Burns and Seymour with the murder and charging Fry with aiding and assisting Jones to escape. Thereafter at the January Term, 1934, while the said cause was pending in the recorder's court, the solicitor sent a bill to the grand jury, charging Jones, Burns and Seymour with the crime. While the bill was being considered by the grand jury the solicitor sent for the bill and inserted therein the name of defendant Fry, charging him jointly with the other defendants of the crime of murder. A true bill was returned into open court on Tuesday. As soon as the bill was returned into court counsel for Fry moved for a continuance "for the reason that his client was not included in the original warrant and investigation either before the coroner or the recorder's court in Moore County under a charge of murder . . . and this defendant was not placed under arrest and charged with the crime of murder until the indictment was found on the 2nd day of January Term of court. That defendant had not had an opportunity to prepare his case for trial under the charge of murder and his counsel was not prepared to properly represent his client and to defend him at the January Term of court; that he was taken by surprise in that his client was not included in the original bill sent to the grand jury, and that a bill of indictment charging the said W. H. Fry as an accessory after the fact was considered by the grand jury at said January Term of court and returned "not a true bill," and counsel for defendant, W. H. Fry, urged a continuance of the case in order to enable him to properly prepare the defense of his client."

The foregoing motion was denied.

The case was called for trial on Wednesday, the following day, and counsel for defendant renewed the motion and reasserted that he was "totally unprepared to meet the serious charge of a capital felony at this term of court, and that his client should be given a reasonable opportunity to prepare his defense . . . until the next term of court."

This motion was likewise denied.

The evidence tended to show that on Thanksgiving Day, 1933, Seymour, Jones, Burns and Fry were hunting. Some of the party procured whiskey, and there was evidence that Fry and Burns, and Jones particularly, were "high."

The defendant, Seymour, was used as a State's witness and testified in effect that soon after the party assembled Jones and Fry had a private conference. Shortly afterwards Fry and Jones said: "Let's go on across toward Rinehart's house. Fry suggested going that way." When the party approached Rinehart's premises, "Emory Burns bet Mr. Fry fifty cents he could shoot a pine off with one shot and he was shooting the pine and Mr. Rinehart came. . . . Some dogs barked up on the hill and some one of them says, 'Yonder's somebody,' and I looked around and said, 'I expect he's bird hunting,' and Mr. Fry said, 'It's Rinehart,' and Jones started . . . up that way and called Rinehart a pot gutted son of a bitch. . . . Mr. Rinehart said, 'What is the matter with you?' . . . Jones got hold of Rinehart's gun barrel and when he got up there he called Burns and said, 'Come on and help me whip him,' and Burns went on up there and raised his gun toward Rinehart and says, 'Drop your gun.' At that time Jones had hold of Mr. Rinehart's gun barrel and was backing him up the hill. Jones threw his gun down when he got hold of Mr. Rinehart's gun. When Burns raised his gun and pointed it at Mr. Rinehart and told him to drop his gun Mr. Rinehart didn't do anything and didn't say anything. . . . Fry had run up there. He had got up there with them and was in the bunch. He was scuffling around there. He (Rinehart) was killed in the scuffle with Jones and Fry. I don't know that he had his hands on anybody. It was all of them mixed up. They were in a tussle there. When Burns went up there and drew his gun on him Fry run up there then. . . . He was right in there amongst them. . . . Mr. Rinehart was facing Amos Jones and he knocked him down. . . . Amos Jones fell and when he did somebody shot him (Rinehart). When the shot was fired Fry and Burns were close to him. . . . Mr. Fry was standing pretty close to him. I guess he was in four feet of Rinehart. . . . Fry didn't say anything. When Jones was knocked down Burns and Fry were both there; they had followed up there the fifteen or twenty feet. . . . I don't think

Burns ever got in the scuffle." There was evidence that Fry "threw his gun down . . . before he got to them." Fry, Jones and Burns left the body of the dead man "cursing" as they walked away. There was also evidence that immediately after the fatal shot was fired Jones accused Burns of shooting the deceased and Burns denied it, "but Mr. Fry did not open his mouth." There was evidence that Fry had stated previous to the killing that he was mad with the deceased and had said to State's witness, "I don't like the durn scoundrel." There was further evidence that after Rinehart was slain that Fry referred to him in vile language. The State offered evidence that "when the scuffle started with the deceased Fry came up and said to the deceased, 'Stop— drop your gun or I will make you do it,' something like that."

Fry testified at the trial that when he saw his companions about to assault the deceased he ran up and attempted to prevent the killing and did all in his power as a peace-maker to avert the unfortunate tragedy. The defendant Fry in apt time properly requested the following in- structions: (1) "That the mere presence of the defendant Fry at the place and time of the homicide, and without giving aid or encourage- ment at or before the commission of the homicide, and without prior conspiracy, although with knowledge that the crime is to be committed, and even with approval of its commission, if that approval is not com- municated to the perpetrator, does not constitute aiding and abetting." (2) "That when three persons are charged with killing another, but not with conspiracy, the jury shall acquit if they have a reasonable doubt as to which one inflicted the injury."

The trial judge declined to give either of the foregoing instructions and the defendant excepted.

The jury convicted Burns, Jones and Fry of murder in the second degree, and from judgment sentencing each of them to substantial terms in the State's prison, the defendant Fry appealed.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Bruton for the State.*
*R. E. Denny and Jones & Brassfield for defendant.*

BROGDEN, J. Four assignments of error are discussed in the brief of appellant. These assignments relate (a) to the refusal of the trial judge to continue the case; (b) to the refusal to submit the special instructions requested by the defendant.

The accepted and long prevailing rule governing the law of continu- ance has been recently stated in *S. v. Garner,* 203 N. C., 361, 166 S. E., 180, as follows: "While, ordinarily, this is a matter resting in the sound discretion of the trial court, nevertheless, it should be remembered that defendants have a constitutional right of confrontation, which can-

not lawfully be taken from them, and this includes the right of a fair opportunity to face 'the accusers and witnesses with other testimony.' . . . But the record is barren of any affidavits, or evidence tending to show a denial of this right. . . . In the absence of a clear showing, the exception must be overruled. The burden is on appellants to show error, and they must make it appear clearly, as the presumption is against them."

While the judicial machinery moved rapidly in this case, it cannot be said as a matter of law, that the mere fact that a defendant is indicted for a capital felony on Tuesday and placed on trial on the following day, is in itself such unseemly haste as to work a denial of constitutional rights.

The special instructions prayed by the defendant were taken from *S. v. Powell,* 168 N. C., 139, 83 S. E., 310; *S. v. Goode,* 132 N. C., 982, 43 S. E., 502. These instructions are correct as abstract propositions of law. However, the evidence for the State discloses that the defendant was "hunting with the pack." Moreover, the testimony for the State tended to show that the three defendants on trial actively engaged and participated in the assault upon the deceased or the "scuffle" which terminated in the death of Rinehart. Consequently, they were acting in unison.

Instructions of a similar nature were requested by the defendant and denied in *S. v. Rideout,* 189 N. C., 156, 126 S. E., 500. In discussing the applicability of the principles of law involved, the Court said: "If the jury found from the evidence, as their verdict indicates they did, that one of the defendants shot Alex Hedgepeth and thereby killed him with a gun and shells which both defendants had carried to the whiskey still with a common purpose, then it was for the jury to determine whether this act was so related to the unlawful act which the defendants had conspired to do as that the conspirator who did not fire the shot was equally as guilty as his conspirator who did fire the shot." The Court further quoting from *S. v. Finley,* 118 N. C., 1161, 24 S. E., 495, said: "The prayer in the abstract embraces a sound doctrine of law; but where a conspiracy or an agreement between two or more to do an unlawful act has been proved, and as a result and consequence therefrom a crime is committed, the rule is different, and it is altogether an immaterial matter which one of the actors actually commits the deed; they are all principals and all guilty of the offense." Furthermore, the original record in the *Rideout case* discloses that there was no allegation of conspiracy in the bill of indictment, but the same laid a charge of murder in the second degree against both defendants.

No error.

SCHENCK, J., took no part in the consideration or decision of this case.